A98A0710. IN THE INTEREST OF S. S. et al., children.
(501 SE2d 618)

McMURRAY, Presiding Judge.

In September 1997, the Gwinnett County Department of Family & Children Services ("DFACS"), initiated a deprivation petition in the juvenile court, alleging that the minor children S. S., aged ten; T. S., aged seven, and S. S. ("ST. S.") aged three, were deprived within the meaning of OCGA § 15-11-2 (8) (A) because their "house was very cluttered. There were clothes on the floor, piles of garbage, and a foul odor throughout the house." The petition also alleged the "home [was] unsanitary." The children have been under the supervision of DFACS since "5 a.m., on 7/24, 1997." At the deprivation hearing, the following evidence was adduced:

The instant case was initiated when Officer D. M. Plunkett of the Gwinnett County Police Department responded to a medical alarm at appellant's home on July 24, 1997. Officer Plunkett "was met at the back door by a three year old nude boy, ([ST. S.]). [Officer Plunkett] entered the residence and observed a very cluttered house. There were piles of clothes on the floor, piles of garbage and a foul odor through out the residence." Officer Plunkett summoned Steve Gill, a DFACS caseworker, who immediately visited the home and took photographs documenting the cluttered and filthy condition of the home. The back porch was "cluttered with boxes, clothes, so it was hard to get past the back porch. [As Steve Gill] walked in, [he saw] clothes on the floor, there was food, there was a smell . . . [of] bad food. The children's rooms, the boys' room was effectively blocked off because of stuff in the front door. And [the same with] the little girl's room. . . ." One of the children was still running around naked. "[T]here was trash, there was food. You couldn't get into rooms, the beds were stained. The bed that the daughter was sleeping on just had this huge, black, sort of moldy looking stain in the middle of it. . . ." When he left, Steve Gill discovered he had picked up a slug on his leg while walking through the house. On the day before the hearing, appellant would not allow Steve Gill into her home. He was able to observe through the windows from the back porch that the children's rooms were still filled with clutter. And, although the back porch had been cleaned up, it was still so infested with fleas that when Steve Gill left the porch his legs were covered with them. Steve Gill thought reunification efforts should cease because "this is the third time the house was not a safe place for the children to be."

DFACS became first involved with appellant and her children in 1995. Twice prior to the instant deprivation hearing, appellant's children were removed from the home because of unsafe and unsanitary living conditions. Appellant is physically able to perform housekeeping but is unable to master her environment. Specifically, Karen Thatcher, a Family Support Services parent aide assigned to assist appellant, testified she gave appellant realistic housekeeping goals and while "the kitchen [is] clean and presentable[, and] the porch has been cleared off[, still, the] bedrooms are still pretty much how they were[, and] the living room area is about the same." Only in "the last two . . . to three weeks [before the hearing was there any] major improvement. For a while there, nothing had really changed." In Karen Thatcher's opinion, the "bedrooms were not livable for the children[, in that they] were just full of junk. . . . There just would be nowhere for them to sleep." There remains an overpowering stench of dog and cat urine, and everytime Karen Thatcher visited appellant's home, she had fleas on her when she left. Appellant explained that she is overburdened partly because she cares for her elderly and terminally ill parents, both of whom are incontinent and one of whom is bedridden. Appellant remains unemployed. She has a history of alcohol abuse and has received rehabilitative treatment. Although appellant contends she no longer drinks, Karen Thatcher found a "24 pack of beer in the refrigerator" one week before the deprivation hearing.

The juvenile court determined the children were deprived; that continuation in the home would be contrary to the welfare of the children; that reasonable efforts had been made to prevent removal; but that the best interest of the children warranted "continuing temporary custody . . ." with DFACS. The parents were ordered to "cooperate with [DFACS] and to follow its recommendations designed to reunify the family." The court withheld decision on whether DFACS could suspend reunification efforts pursuant to OCGA § 15-11-41 (i) pending a psychological evaluation of appellant, the natural mother. In this direct appeal,[1] appellant's sole enumeration of error contends the evidence was insufficient to warrant a finding of deprivation and the resulting continued temporary custody of the children with DFACS. *Held*:

A " 'Deprived child' means a child who . . . [i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [the] child's physical, mental, or emotional health or morals[.]" OCGA § 15-11-2 (8) (A). This deprivation must be established by clear and convincing evidence. OCGA

---

[1] Although issues remain pending in the juvenile court, the appellant was not required to comply with the interlocutory appeal procedure. *In the Interest of S. A. W.*, 228 Ga. App. 197 (1) (491 SE2d 441).

§ 15-11-33 (b) (1); *Watkins v. Watkins*, 266 Ga. 269, 272 (2), 273, n. 19 (466 SE2d 860). Consequently, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the children were deprived and whether, under the circumstances of this case, the court properly continued temporary custody of the children in DFACS. *In the Interest of S. A. W.*, 228 Ga. App. 197, 199 (2), 200 (491 SE2d 441); OCGA § 15-11-41 (b). "This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met. [Cit.]" *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243).

To authorize "even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child." *In re D. H.*, 178 Ga. App. 119, 124 (342 SE2d 367) (whole court). If a child is found to be deprived by clear and convincing evidence under these standards, the court may transfer temporary legal custody to DFACS. OCGA §§ 15-11-33 (b); 15-11-34 (a) (2) (C); *In the Interest of A. L. L.*, 211 Ga. App. 767 (440 SE2d 517). The temporary order removing a child from the home "shall be based upon a finding by that court that continuation in the home would be contrary to the welfare of the child." OCGA § 15-11-41 (b). Further, the court must make a factual finding that DFACS made reasonable efforts to remedy the need to remove the children from their home. Id.

1. Appellant argues that the case sub judice "is very similar to *In [the Interest of] D. S.*," 217 Ga. App. 29, 30 (1), 31 (456 SE2d 715), where this Court reversed a finding of deprivation and award of temporary custody to the Heard County DFACS based upon evidence that children were living in unsanitary conditions. But that case is physical precedent only under Georgia Court of Appeals Rule 33 (a), and so is not binding precedent applicable to this case. Moreover, the reunification efforts of DFACS in the case sub judice, such as providing a parent aide to appellant and encouraging her to fulfill realistic goals, are sufficient to distinguish this case.

2. Appellant's home is not, as she argues, merely an example of bad housekeeping. Rather, it is an example of an environment which poses a substantial threat to the physical health of its occupants. A child existing in such an environment is "without the care or control necessary for his physical . . . health" and, is therefore deprived within the meaning of OCGA § 15-11-2 (8). The expert opinion of Karen Thatcher that the bedrooms are unlivable is entitled to some

weight. *Moss v. Moss*, 135 Ga. App. 401, 404 (5) (218 SE2d 93). The legislative definition of "deprived" uses broad enough terminology to allow the juvenile court a sound discretion in reaching such a finding. *In the Interest of C. N. G.*, 204 Ga. App. 239 (419 SE2d 42); *Moss v. Moss*, 135 Ga. App. 401, 405 (6), supra. That the house lapsed repeatedly into a putrid and infested state demonstrates appellant's neglect of her children's health and physical well-being, tantamount to an incapability to care for them. Because the unwholesome condition of the home is the cause of the children's deprivation, the juvenile court was authorized to conclude that allowing them to remain in the home under those persistent conditions would be contrary to their welfare. The evidence further shows that, despite efforts of caseworkers and the parent aide to alleviate the conditions in appellant's home, appellant allowed the home to remain in its unhealthy and unsanitary state through the date of the hearing. The juvenile court's disposition of the children was, in our view, warranted by the evidence.

*Judgment affirmed. Eldridge, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 16, 1998.

*Julie B. Prokopovich*, for appellant.

*Thurbert E. Baker, Attorney General, William C. Joy, Dennis R. Dunn, Senior Assistant Attorneys General, Shalen A. Sgrosso, Assistant Attorney General, Cheeley & King, Joseph E. Cheeley III, Deborah A. Stone*, for appellee.