A98A1327. IN THE INTEREST OF K. L. et al., children.
(507 SE2d 542)

Judge Harold R. Banke.

The natural parents of K. L. (a female born on March 24, 1989), R. L. (a male born on February 28, 1990), K. S. (a female born on July

24, 1991), and K. L. (a female born on June 5, 1994) appeal the termination of their parental rights regarding their children. The parents contend the evidence presented was insufficient to support a finding of parental inability or misconduct or to show the termination of their parental rights was in the best interest of the children. They also contend the evidence was insufficient to support a finding that the children's deprivation was likely to continue and could not be remedied. *Held*:

The standard of review is whether, after viewing the evidence in a light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parents' rights should have been lost. *In the Interest of J. H.*, 210 Ga. App. 255, 258 (1) (435 SE2d 753) (1993). On appeal, this Court defers to the trial court's fact findings and will affirm unless the appellate standard is not met. *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997).

The Department of Family & Children Services ("DFCS") took the elder K. L., R. L. and K. S. into custody in December 1993 after they were picked up by the police. Their parents were subsequently arrested for cruelty to children. Following a hearing, the juvenile court found the children had been left alone for an unknown time, the house where the children were found contained containers of propane gas, rusted nails, plates of spoiled food, unwashed clothing, and other dangerous tools and items. The children had not been bathed for an unknown time, and they smelled of urine; the boy was unclothed, and the girls were partially clothed and covered with dirt. The juvenile court concluded that the children were deprived. This determination was not appealed.

After the older children were placed in DFCS' custody, the juvenile court approved a DFCS-developed reunification case plan that required the parents to meet several goals: (1) cooperate and maintain contact with DFCS, (2) have regular contact with the children, (3) show interest in the children and pay child support, (4) arrange for the children to be supervised safely, (5) understand the children's needs and attend counseling sessions and parenting classes, (6) resolve criminal charges and get out of jail, (7) obtain suitable housing, and (8) keep the home in safe and sanitary condition. This plan remained in effect while the children were in DFCS' custody and a citizen review panel met every six months to review the parents' progress under the plan.

About a year later, DFCS took K. L., the parents' youngest child, into custody after a caseworker saw that she was living in deplorable conditions. The caseworker reported K. L. was filthy and was using a piece of dirty foam rubber for a bed; the floor was covered with stale food and cigarette butts. After a deprivation hearing, the juvenile

court found that the home in which the child was living was unsuitable for a child of tender years because it was unsanitary and a Coleman stove and space heater were being used near the six-month-old child. The child was filthy. Based upon these findings, the juvenile court concluded that K. L. was deprived. This deprivation order also was not appealed by the parents. The juvenile court ordered the parents to comply with a reunification plan that contained the same goals as the plan developed for their other children.

In February 1996, a citizen review panel recommended that the parental rights be terminated. This recommendation was followed in June 1996 by the recommendation of another citizen review panel to terminate the parental rights because one of the children reported that the father had molested her.

After a termination hearing on all the children, the juvenile court found clear and convincing evidence of parental inability or misconduct and concluded that termination of the parental rights was in the best interest of the children. The juvenile court's findings of fact and conclusions of law are supported by the record.

The evidence showed the parents were notified more than six months before the hearing that they must vacate the house in which they were living, but as of the hearing date they had not located another place to live. Further, although the parents attempted to comply with certain of the case plan goals, the evidence showed that they had not paid child support, had not completed all of the parenting classes, and the mother did not complete a counseling program even though a counselor testified that she needed further counseling. Further, the parents did not cooperate with visitations by the parent aide.

The parents at first cooperated with DFCS and worked toward complying with the case plan, but for two months before the hearing DFCS had no contact with the parents. Although the parents brought their children toys earlier, they never supported the children even though they understood the obligation to make support payments and DFCS provided them with envelopes for mailing the support payments. While the parents maintain that the support obligation was deleted from the plan and they were never asked to pay a specific amount, the case plan and the DFCS caseworkers' testimony contradict those contentions.

Most significantly, the caseworkers testified that the unsanitary conditions of the home did not change after the children were removed and the parents had completed some parenting classes. One year after the older children were removed, the house was still extremely dirty and unsanitary.

A clinical psychologist, who examined the father, testified that there was little evidence the father understood the enormity of the

problems with the children and what was required of him in taking care of the children, and it was highly unlikely that he would be able to provide adequate care and safety for them. The psychologist also testified that the children displayed evidence of early deprivation while in the parents' care, but that they were making good adjustment to foster care.

The juvenile court employed the two-step process for termination of parental rights. "In considering the termination of parental rights, the court shall first determine whether there is present clear and convincing evidence of parental misconduct or inability. . . . If there is clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child . . . including the need for a secure and stable home." OCGA § 15-11-81 (a).

Since the parents had been without custody of the children for over a year, the court was authorized under OCGA § 15-11-81 (b) (4) (C) to determine that the parents, without justifiable cause, failed to comply with the plan for reunification. See OCGA § 15-11-81 (b) (4) (C) (i)-(iii). The evidence shows that the parents failed to comply with the plan in many respects: they did not cooperate with DFCS, support the children, make arrangements for the children to be safely supervised, find a place to live for the family, and obviously they did not keep the home in a safe and sanitary condition.

The unappealed deprivation orders of the juvenile court are sufficient to establish that the children were deprived within the meaning of OCGA § 15-11-81 (b) (4) (A) (i). *In the Interest of A. M. B.*, 219 Ga. App. 133, 134 (464 SE2d 253) (1995). Further, "the past conduct of the parent is properly considered by the court in determining whether such conditions of deprivation are likely to continue. [Cits.]" *In the Interest of J. L. Y.*, 184 Ga. App. 254, 257 (2) (361 SE2d 246) (1987). In this appeal, the evidence shows that the parents never remedied the conditions in their home that caused the children to be removed initially. Therefore, it is completely reasonable to expect that these conditions will continue.

The circumstances that authorized the juvenile court to determine the children were deprived due to lack of proper parental control or inability and that such deprivation was likely to continue also provide clear and convincing evidentiary support for the conclusion that such continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the children. OCGA § 15-11-81 (b) (4) (A) (iv); *In the Interest of D. T.*, 221 Ga. App. 328, 329 (1) (471 SE2d 281) (1996). Thus, this evidence coupled with the clinical psychologist's testimony that the children showed signs of

deprivation from their care by their parents was sufficient to demonstrate the harm to the children.

Accordingly, we find the evidence was sufficient to support the findings of parental inability or misconduct, to support a finding that the deprivation was likely to continue and not be remedied, and to support the determination that termination of the parental rights was in the best interest of the children.

*Judgment affirmed. Johnson, P. J., and Smith, J., concur.*

DECIDED OCTOBER 15, 1998.

*Hurl R. Taylor, Jr.*, for appellants.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, William C. Joy, Senior Assistant Attorneys General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Nardone & Read, Robert G. Nardone, Dorothy V. Murphy*, for appellee.

