A98A1975. IN THE INTEREST OF B. D. et al., children.
(511 SE2d 229)

SMITH, Judge.

The mother of B. D., T. W., A. W., and M. W. appeals from the order of the Whitfield County juvenile court terminating her parental rights, contending that the trial court erred in terminating her rights because the State failed to meet its burden of proof in three respects.[1] The standard of review in cases involving the termination of parental rights is whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights have been lost. *In the Interest of F. G.,* 233 Ga. App. 153 (503 SE2d 387) (1998). We find no error and affirm.

The decision to terminate parental rights is a two-step process. The court first must determine whether clear and convincing evidence exists of parental misconduct or inability, as defined in OCGA § 15-11-81 (b). Parental misconduct is found when the child is deprived, the cause of the deprivation is lack of proper parental care or control, the deprivation is likely to continue or will not be remedied, and it is likely to cause serious physical, mental, emotional or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). If such a finding is made by the court, it then must consider whether the termination of the parent's rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. OCGA § 15-11-81 (a). See *In the Interest of A. M. V.,* 222 Ga. App. 528, 529 (474 SE2d 723) (1996).

1. The mother first contends that the State failed to present evi-

---

[12] *Porter,* supra, 261 Ga. at 422 (2).
[1] The fathers of the children voluntarily surrendered their parental rights.

dence of present parental misconduct or inability. She argues that to support termination of parental rights, the evidence must show *current* unfitness, not merely past problems. This is, of course, a correct statement of the law. But in this case, the State met its burden.

The record is replete with references to the mother's problems with chronic alcohol abuse, going back at least to 1992, and to her problematic relationship with the father of three of the children, who abused both her and the children. Several witnesses testified that the mother's relationship with the children improved each time this man left the home (usually because he was incarcerated for various crimes), but that the mother invariably allowed him to return and the abuse began again.

The Department of Family & Children Services (DFACS) first became involved with the family in 1991 because of "repeated cycles of domestic violence between" the mother and the father of the three youngest children and the mother's alcohol problem. The order recites that DFACS made numerous referrals for the mother to obtain social services such as counseling, parenting classes, and help with establishing a stable home, but with minimal results. This finding is supported by evidence. The children were returned to their mother once and were returned with the imposition of a "safety plan," which required her to keep the children from having any contact with the abusive father. The mother did not do so; she took the children to a motel, left them alone while she and the father went out to buy beer, then returned and had sex in the presence of the children. The mother watched pornographic films with the father and with her children. The children also testified that their mother abused them when she was drunk and that she and the abusive father showed them how to shoplift.

In addition, under OCGA § 15-11-81 (b) (4) (B) (iv), the juvenile court considered the mother's "egregious conduct toward" the children in determining whether they lacked proper parental care and control. The evidence that the children watched pornographic movies with their mother and observed her having sex shows just such "egregious conduct," as does the mother's violation of the "safety plan."

Most of this evidence involved past behavior. But in a termination case, even evidence that is a year or two old is pertinent. *In the Interest of J. S.*, 232 Ga. App. 876, 879 (502 SE2d 788) (1998). Moreover, in this case evidence was also presented of very recent unfitness on the part of the mother. The petition was filed in November 1997. Evidence was presented that in the fall of 1997 the mother had used crack cocaine and that in October 1997 she failed a drug screening test. She entered a treatment program for cocaine abuse, but was discharged "unchanged" in November 1997. Moreover, the psychologist who evaluated the mother in December 1997 testified that he

believed she had a serious alcohol problem. The mother has not complied with the case plan goals of finding stable housing and employment; she finally became employed only after the termination petition was filed, and she had three residences between October 1997 and the date of the hearing in February 1998. This evidence authorized the juvenile court to find clear and convincing evidence of parental misconduct or inability.

2. The mother next contends that the evidence was insufficient to show that the cause of the deprivation is likely to continue or will not be remedied, as required by OCGA § 15-11-81 (b).

This contention is without merit. First, evidence of past conduct may be considered in determining whether the deprivation would be likely to continue if the children were returned to their mother. *In the Interest of A. M. V.*, supra at 531. And the past conduct of the mother certainly justifies such a prediction.

Second, the State presented expert testimony to that effect. The evaluating psychologist testified that based upon the mother's history, he predicted an increased likelihood of noncompliance with any treatment programs in the future. And based upon her history with her children, he was not optimistic that she would be an effective parent. Another psychologist, who both evaluated and treated the children, testified that returning them to a home where the parent has a history of noncompliance with treatment would increase the risk of problems for the children. The family's present DFACS case manager testified he believed that notwithstanding all the intervention, he had seen nothing that led him "to believe anything had changed," that nothing in the mother's medical records indicated to him that she was currently committed to changing her situation, and that in his opinion, the children's deprivation was likely to continue if they were returned to the mother. This authorized the juvenile court to find, by clear and convincing evidence, that the cause of deprivation was likely to continue or would not be remedied, as required under OCGA § 15-11-81 (b).

3. The mother asserts that the evidence was insufficient to support a finding that terminating her parental rights was in the best interest of the children. We do not agree. "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citations and punctuation omitted.) *In the Interest of J. S.*, supra at 881 (1). Viewing the evidence presented in a light most favorable to the mother, more than sufficient clear and convincing evidence exists to support the finding that termination of the mother's rights was in the best interest of these children. The children have been in a stable foster home, and they all clearly long for stable homes. None expressed any desire

to return to their mother's care. DFACS has arranged potential adoptive placements for the children. Termination of this parent's rights was clearly in the best interest of the children.

*Judgment affirmed. Johnson, C. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JANUARY 27, 1999.

*Jerry W. Moncus,* for appellant.

*Thurbert E. Baker, Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, Richard K. Murray,* for appellee.