517 S.E.2d 589 (1999)
238 Ga. App. 50
In the Interest of C.N.H. et al., children.
No. A99A1096.
Court of Appeals of Georgia.
May 11, 1999.
James I. Collins, Jr., LaFayette, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, Steven M. Ellis, Chickamauga, for appellee.
JOHNSON, Chief Judge.
The mother of C.N.H., A.R.T.H., K.M.H., and J.E.H. appeals from a juvenile court order terminating her parental rights. She contends the trial court erred in determining that the cause of the children's deprivation is likely to continue or will not likely be remedied. For reasons which follow, we affirm.
On appeal, we view the evidence in a light most favorable to the juvenile court's order and determine whether a rational trier of fact could have found by clear and convincing evidence that the natural parent's rights should have been terminated; we do not weigh the evidence and must defer to the trial judge as the factfinder. In the Interest *590 of D.L.N., 234 Ga.App. 123, 125(2), 506 S.E.2d 403 (1998). We find no error and affirm the decision of the juvenile court.
The decision to terminate parental rights involves a two-step process. First, the juvenile court must determine whether there is clear and convincing evidence of parental misconduct or inability, as defined in OCGA § 15-11-81(b). Parental misconduct is found when the child is deprived, the cause of the deprivation is lack of proper parental care or control, the cause of the deprivation is likely to continue or will not likely be remedied, and the continued deprivation will cause or is likely to cause serious harm to the child. OCGA § 15-11-81(b)(4)(A). Second, if the juvenile court finds clear and convincing evidence of parental misconduct or inability, it must consider whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. OCGA § 15-11-81(a). See In the Interest of B.D., 236 Ga.App. 119, 511 S.E.2d 229 (1999).
Viewing the evidence in favor of the juvenile court's findings, the record shows that the Walker County Department of Family & Children Services (the "Department") became involved with six-year-old C.N.H., five-year-old A.R.T.H., three-year-old K.M.H., and one-year-old J.E.H. in August 1994 after receiving several child protective services referrals. The mother signed a case plan in September 1994. In November 1994, the mother left all four children with their grandmother, who called the Department and said she could not care for the children. The juvenile court held an adjudicatory hearing, found the children deprived, and awarded temporary legal custody of the children to the Department. The court allowed the mother to retain physical custody of the children. The Department developed a case plan requiring the mother to attend counseling classes, parenting classes and AA meetings; stabilize by taking her medication; leave the children with a reliable baby sitter; maintain a safe, stable home; and refrain from drinking alcohol around the children.
On December 9, 1994 the juvenile court held a hearing to review its deprivation order. The mother stipulated to the children's deprivation.[1]
In April 1995, the mother was arrested for driving with defective equipment, a suspended license and no proof of insurance. She agreed that the Department should obtain physical custody of the children because she needed to become financially stable. The children were removed from her home. A May 1995 case plan required the mother to obtain a safe, stable home environment; acquire and demonstrate appropriate parenting skills; become financially stable; become alcohol-free; and visit the children regularly.[2]
In November 1995, the juvenile court again awarded physical custody of K.M.H. and J.E.H. to the mother. However, in April 1996, the mother was arrested, charged, and later convicted of driving under the influence of alcohol and driving with a suspended license. K.M.H. was in the car at the time of the mother's arrest. K.M.H. and J.E.H. were removed from her home. The mother was fined and placed on probation, but fled the area, failed to show up at probation hearings and failed to pay the fines.
On August 23, 1996, the court entered an order directing the mother to pay $7.50 per child per week in child support. She disregarded this order and paid no child support until January 1998.
In September 1996, the mother and her boyfriend moved to Tennessee, then later South Carolina. Beginning in October 1996 the citizen review panels recommended that the mother's parental rights be terminated and that the children be placed for adoption. The Department filed a petition to terminate the mother's parental rights, and the mother *591 and her boyfriend moved back to Georgia. A hearing was held on April 2, 1998.
At the hearing, the foster mother for K.M.H. and J.E.H. testified that K.M.H. was very hyperactive, confused, and had been diagnosed with attention deficit disorder. K.M.H. was being given Ritalin to control her behavior and another medication to help her sleep. The foster mother testified that J.E.H., who was nearly four years old, was not toilet-trained, could not feed or dress himself, and had severe speech and behavior problems. However, his behavior was improving with medications. The foster mother testified that the mother only visited the children two or three times and that after the visits, K.M.H. misbehaved and became angry. She stated that both children needed a stable home with constant supervision.
The foster mother for C.N.H. and A.R.T.H. testified that both children required a strict routine and constant supervision. A.R.T.H. had severe behavioral problems and was diagnosed with manic depressive disorder. She related that A.R.T.H. was very aggressive and threw tantrums, but was taking medication to control her depression and behavior problems. C.N.H. was also diagnosed with manic depressive disorder. The mother had not visited the children since C.N.H. was placed in the foster home 14 months earlier.
The mother's caseworker testified that the mother failed to comply with the requirements of her case plan. She did not provide verification that she completed parenting classes or attended AA meetings. She failed to remain sober and was arrested for DUI on April 16, 1996, one day after a citizen panel review. A parent aide worker quit because the mother refused to follow her recommendations. The caseworker further testified that the mother had neglected to maintain a safe, stable home and failed to become financially stable. The mother also did not regularly visit the children after she moved from Georgia in September 1996. She further testified that the children's deprivation would continue if they were returned to the mother because of the mother's inability to provide the stable home that the children needed.
The mother's boyfriend testified that he and the mother lived in approximately eight residences during the previous two years. Neither he nor the mother had a driver's license due to DUI convictions. While he hoped to marry the mother, she was still married to another man.
The mother admitted that when the Department obtained custody of the children, she attempted suicide and was admitted to a mental hospital. According to the mother, she lived in a one-bedroom apartment and worked at a fast food restaurant. She produced evidence that she had attended three AA meetings in January 1998. She also produced evidence that she had paid $75 in child support in January 1998. The mother admitted that she overdosed on antidepressant drugs two weeks before the termination hearing. She last visited the children in September 1996. Based on all the evidence, the juvenile court entered an extremely thorough order on April 15, 1998 terminating the mother's parental rights.
1. The mother does not argue that the children are deprived, but merely contends the evidence was insufficient to show that the cause of the deprivation is likely to continue or will not likely be remedied, as required by OCGA § 15-11-81(b). This contention is without merit.
First, evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to their mother. See In the Interest of B.D., supra at 121(2), 511 S.E.2d 229. The past conduct of the mother in this case certainly justifies such a prediction. Second, the record is replete with examples of the mother's failure to cooperate with the Department's case plan and with court orders. Moreover, she overdosed on a prescription medication only two weeks before the termination hearing.
The mother's belated efforts in January 1998 to comply with the Department's plan by attending AA meetings and finding a house and a job, as well as her efforts in January 1998 to comply with the court order regarding child support payments, were too little, too late. This court has repeatedly recognized that "[t]he decision as to a child's *592 future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) In the Interest of S.J.C., 234 Ga.App. 491, 494(1), 507 S.E.2d 226 (1998). The facts show that the mother is clearly unable to provide the constant supervision and stable home that the children require, especially in light of the children's special needs.
2. The mother next asserts that the evidence was insufficient to support a finding that terminating her parental rights was in the best interest of the children. We do not agree. "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citations and punctuation omitted.) In the Interest of B.D., supra at 121(3), 511 S.E.2d 229.
More than clear and convincing evidence exists to support the finding that termination of the mother's rights was in the best interest of the children. The children are well cared for in stable foster homes and clearly need stable homes and close supervision. Education and therapeutic services are being provided and medication is being administered and monitored if necessary. The few times the mother did visit her children were extremely disruptive. Termination of the mother's parental rights was clearly in the best interest of the children. Id.
Based on the foregoing, the trial court did not err in denying the mother's motion for new trial.
Judgment affirmed.
POPE, P.J., and SMITH, J., concur.
NOTES
[1] This deprivation order was extended following another hearing on May 2, 1996. During this hearing, the mother agreed to allow the Department to maintain temporary custody and control of the children.
[2] These goals were maintained during the next two years, and on April 8, 1997 the Department added the goal of cooperating with child support enforcement to determine child support payments.