A01A0947. IN THE INTEREST OF D. T. et al., children.
(555 SE2d 215)

MIKELL, Judge.

Appellants, the natural mother of D. T. and D. T. and the putative father of the younger child, appeal from the termination of their parental rights. They contend that the trial court erred by admitting evidence of prior deprivation orders and case plans and by not requiring the Carroll County Department of Family & Children Services (the "Department") to place the children with a family member. The appellants also challenge the sufficiency of the evidence. We affirm the termination order of the juvenile court.

On appeal, we view the evidence in the light most favorable to the judgment of the juvenile court and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parents' rights have been lost. *In the Interest*

*of A. D.*, 243 Ga. App. 727, 728 (534 SE2d 457) (2000); *In the Interest of D. B.*, 242 Ga. App. 763 (531 SE2d 172) (2000).

So viewed, the record shows that D. T. and D. T. are half-brothers who are eleven and seven years of age. They are the youngest of six children born to appellant mother.[1] The Department became involved with this family in February 1996 when appellant mother was briefly incarcerated for driving with a suspended license, and D. T. and D. T. were left in the care of their then 14-year-old sister, who contacted the Department for assistance. The Department kept the children for several days, until appellant father arrived to retrieve them. The record shows that shortly after appellant mother was released from jail on bond and was reunited with D. T. and D. T., she and appellant father burglarized a home in Haralson County and used the proceeds of the burglary to buy drugs.

The Department made an unannounced visit to the family's residence at the West Georgia Lodge on July 18, 1996. The caseworker found the children alone in filthy conditions with inadequate food and wearing soiled clothing. The juvenile court granted the Department temporary custody of the children in an order filed on July 30, 1996. The court held a deprivation hearing on August 8, 1996; however, the appellants did not appear. Service was attempted at their last known residence, but appellants had moved without providing a forwarding address. Neither the Department nor her court-appointed counsel knew appellant mother's whereabouts. Appellant father later admitted that he had fled to Alabama and Texas to elude law enforcement in Georgia around the time of the hearing. The juvenile court entered a deprivation order and placed the children in the custody of the Department.

The record shows that appellant mother worked with the Department to develop a case plan for reunification requiring her to maintain a bond with the children, to obtain and maintain a stable home environment and employment, and to cooperate with the Department by participating in recommended programs and services. However, appellant mother failed to maintain a stable home or steady employment, and she refused to complete a substance abuse program. Instead, she moved to Texas to join appellant father, failing to notify the Department or her family of her whereabouts. While in Texas, appellant father was stabbed in the neck during a drug deal. The appellants subsequently returned to Georgia after they were apprehended by the authorities. Appellant father was extradited to Alabama for an outstanding theft by receiving charge. He served six

---

[1] The other four children are over the age of eighteen or live with their father, who is not a party to this appeal. They are not at issue in this case.

months in prison there. Appellant mother was allowed to return to Georgia on probation.

Appellant mother contacted the Department in March 1997, approximately seven months after her children were placed in the Department's custody and the deprivation order was entered. She obtained employment at a Waffle House restaurant and found a place to live. In April 1997, she attended a panel review and signed a new case plan, whereby she was required to obtain a psychological evaluation and to follow counseling recommendations made by the panel.

The evidence shows that appellant mother failed to complete the psychological evaluation and that she did not attend the six recommended therapy sessions. Additionally, she refused to comply with the condition of her probation that she submit to random drug tests, and she failed to provide the Department with the results of other drug tests she claimed to have taken. Appellant mother followed her visitation schedule with the children for two months; however, she ceased visitation altogether after July 1997. She also was unable to maintain consistent employment and lost the housing she had obtained.

On July 17, 1997, a hearing was held to extend the Department's temporary custody of the children. Another deprivation order was entered, and the court ordered that the Department retain custody of the children. Neither parent was present at the hearing. We note that appellant father was incarcerated at the time.

On July 22, 1997, both appellants attended the panel review and signed a new case plan. Appellants stated that they understood the importance of meeting their goals. The panel gave them three months to demonstrate their compliance. Appellant mother was required to do the following: maintain a bond with the children through scheduled visitation; attend counseling twice monthly for a period of six months and follow the subsequent recommendations generated from her psychological evaluation; maintain stable employment and housing for six months and keep her caseworker notified of her status; attend substance abuse counseling twice weekly for six months; submit to drug and alcohol tests when requested; and abide by the terms of her probation. Appellant father was given three months to legitimate his child.

The caseworker did not hear from the appellants again. The evidence showed that they committed several burglaries during the subsequent months and were both incarcerated. The court entered another deprivation order following a hearing held on June 25, 1998, at which both appellants were present.

On February 4, 1999, the Department filed a petition for termination of parental rights against appellant mother and all legal and putative fathers. The court began a hearing on June 17, 1999; how-

ever, the matter was continued due to a conflict of interest among counsel. The Department filed a second petition on April 25, 2000. Counsel for appellants stipulated that the children were deprived as both appellants were incarcerated at that time, and the court entered a fourth deprivation order on June 1, 2000.

The termination hearing took place on August 23, 2000. Dr. Linda Eason, a licensed psychologist who performed a full evaluation of D. T. and D. T., testified that the children were in a "very stable and positive environment," and that they had grown very attached to their foster family during the past four years. She further testified that the younger child's emotional and behavioral functions had improved significantly since his removal from the appellants' custody; that he had been with his foster mother since the age of two and had no real recollection of the appellants; that the two children shared an extremely close relationship; and that it would be in their best interests to be adopted by their foster mother.

The children's foster mother testified that when she first obtained custody of D. T. and D. T., they were "unkempt" and were suffering from untreated head lice. She further testified that the younger child seemed "really emotionally disturbed" and had difficulty sleeping during the first year he was in her care. She told the court that the boys were doing well at home and at school, that she loved them very much, and that she hoped to adopt them.

Appellant mother admitted at the hearing that she had failed to meet the goals of her case plans; that she pled guilty to committing burglaries on July 17, 1996, and September 29, 1997, for which she was serving a five-year prison sentence; that she also pled guilty to giving false information to a police officer, for which she was sentenced to one year of probation; and that she was involved in five burglaries committed by appellant father in Carroll County. Appellant mother testified that she no longer abused drugs and alcohol, but she conceded that she used drugs and alcohol heavily in the past, that she refused to submit to required drug screens, and that she had not meaningfully sought substance abuse treatment at all during the period from 1992 until her present incarceration. Appellant father admitted at the hearing that he failed to legitimate his son. Both appellants are currently incarcerated. Appellant mother will be eligible for parole in November 2002, and appellant father has a tentative parole date of February 2004.

The juvenile court entered an order terminating appellants' parental rights on September 12, 2000, and amended that order on October 23, 2000. Appellants filed a motion for an out-of-time appeal. The court vacated its September 12 and October 23 orders and entered a final order terminating appellants' parental rights on

November 10, 2000.[2] This appeal followed.

1. On appeal, appellants first argue that the juvenile court erred in considering certified copies of the four deprivation orders and the case plans because they were not properly served with notice and were not present at two of the hearings. This argument is without merit.

First, with respect to the deprivation orders, appellants have waived the defense of defective service by failing to raise it in any responsive pleadings or motions or at the hearings where they were present. OCGA § 9-11-12 (h) (1) (A), (B). "A party can waive defects in service of process unless an 'objection is made at the first practicable opportunity.'" *In the Interest of D. R. W.*, 229 Ga. App. 571, 574 (2) (494 SE2d 379) (1997), citing *HAP Farms v. Heard*, 209 Ga. App. 684, 685 (1) (a) (434 SE2d 118) (1993). The appellants appeared at the June 25, 1998 deprivation hearing and were represented by counsel at the June 1, 2000 hearing; however, they did not raise the defense of defective service of process. In fact, appellant mother actually stipulated that the children were deprived at the June 1998 hearing, and counsel for both appellants stipulated to the deprivation at the June 2000 hearing.

Furthermore, as demonstrated by the evidence summarized above, appellants repeatedly failed to keep the Department or the court informed of their whereabouts. In fact, appellant father admitted at the termination hearing that he moved to Alabama and Texas to evade capture and that it was not the Department's responsibility to locate him while he was running from the police.

We also find that the case plans were properly admitted into evidence. Appellant mother signed the April 1997 case plan, and both appellants signed the July 1997 plan. All case reviews and panel recommendations were mailed to appellants in jail during their incarceration. "[U]nder [OCGA § 15-11-65 (b), formerly OCGA § 15-11-33 (d)], 'all information helpful in determining (whether the children are deprived), including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition.'" *In the Interest of M. L. P.*, 236 Ga. App. 504, 510 (2) (512 SE2d 652) (1999).

Finally, even assuming, arguendo, that the deprivation orders and case plans were inadmissible, reversal would not be warranted because the factual findings contained therein were corroborated by the testimony of the caseworkers and the appellants themselves dur-

---

[2] The legal father of D. T. and D. T. acknowledged at the hearing that he was not the biological father of either child. The juvenile court terminated the parental rights of "the fathers, both biological and legal." Only appellant mother and appellant father appeal the court's order.

ing the August 23, 2000 termination hearing, where appellants were present and represented by counsel. *In the Interest of J. T. S.*, 185 Ga. App. 772, 774 (2) (365 SE2d 550) (1988).

2. Next, appellants contend that the court erred by not making an exhaustive search for a suitable family member with whom to place the children, pursuant to OCGA § 15-11-103 (a) (1). That statute provides:

> If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family. A thorough search for a suitable family member shall be made by the court and the Department of Human Resources in attempting to effect this placement. . . . *A placement shall be made under the terms of this paragraph only if such a placement is in the best interest of the child.*

(Emphasis supplied.)

We conclude that the juvenile court did not abuse its discretion by placing the children in the Department's permanent custody for the purpose of adoption. The record demonstrates that the Department investigated the possibility of placing D. T. and D. T. with relatives; however, the caseworkers were unable to find a suitable placement for both boys. Caseworker Alecia Brooks testified at the termination hearing that the Department initially attempted to place the younger child with appellant father's sister, but they were ultimately unable to consider any of appellant father's relatives for placement, because he failed to legitimate the child. There was evidence that caseworkers attempted to locate a relative placement in appellant mother's family, but none of the relatives were able to take both boys. The Department determined that it was in the best interests of D. T. and D. T. to remain together based on their close relationship. There was considerable evidence that the children were thriving in their foster home and that their foster mother wished to adopt them.

Thus, the record supports the juvenile court's determination that it was in the children's best interests to remain together in the custody of the Department for the purpose of adoption. See *In the Interest of B. R. W.*, 242 Ga. App. 232, 240 (3) (530 SE2d 5) (2000).

> In light of this evidence, proof that the [children] would remain in a safe and stable foster home upon termination of the [appellants'] parental rights and evidence of the foster

mother's intent to adopt the [children], we find no abuse of discretion in failing to place the [children] with a family member upon termination of the [appellants'] parental rights.

(Citations and punctuation omitted.) *In the Interest of C. L. R.*, 232 Ga. App. 134, 139 (3) (501 SE2d 296) (1998).

3. Finally, the appellants contend that there was insufficient evidence to support the juvenile court's termination of their parental rights. We disagree.

The statutory criteria for the termination of parental rights are the two-step procedure provided in OCGA § 15-11-94 (a). The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the children are deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the children. OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv). If these four factors are satisfied, the court must then determine whether termination of parental rights is in the best interests of the children, considering their physical, mental, emotional, and moral conditions and needs, including the need for a secure and stable home. OCGA § 15-11-94 (a); *In the Interest of D. B.*, supra at 763-764; *In the Interest of A. M. V.*, 222 Ga. App. 528, 529 (474 SE2d 723) (1996).

We conclude that the record summarized above provides ample support for the termination of the appellants' parental rights. First, there was clear and convincing evidence that D. T. and D. T. were deprived, based on the four unappealed deprivation orders, the testimony elicited at the hearing, and the appellants' stipulations that the children were deprived in 1998 and 2000. *In the Interest of E. C.*, 225 Ga. App. 12, 14-15 (482 SE2d 522) (1997).

Second, the evidence demonstrates that the deprivation was caused by lack of proper parental care or control. It is clear that the appellants' continued substance abuse has affected their relationship with the children and their ability to parent. Additionally, their repeated criminal convictions and subsequent incarceration constitute "aggravating circumstances" that may be considered in support of the termination of their parental rights. *In the Interest of B. C.*, 235 Ga. App. 152, 154 (508 SE2d 774) (1998).

OCGA § 15-11-94 (b) (4) (C) provides that when the children are not in the custody of the natural parents, the court may consider whether the parents without justifiable cause have failed significantly for a period of one year or longer to develop and maintain a parental bond with the children, to provide for the care and support

of the children, and to comply with a court-ordered reunification plan. The evidence summarized above clearly supports a finding that appellants have failed to develop a bond with the children, to support them, or to comply with the goals of their reunification plans. Thus, the juvenile court properly found that lack of proper parental care or control caused the children's deprivation.

Likewise, the third factor, whether the cause of the deprivation is likely to continue, is satisfied by the record. OCGA § 15-11-94 (b) (4) (A) (iii). The court may consider past conduct of the parents in making its determination that such conditions of deprivation are likely to continue. *In the Interest of C. W. D.*, 232 Ga. App. 200, 204 (501 SE2d 232) (1998). "Such an inference is appropriate, since the juvenile court is not required to reunite [D. T. and D. T.] with appellant[s] in order to obtain current evidence of deprivation or neglect." *In the Interest of E. C.*, supra at 16. Appellant mother's history of criminal behavior, failure to complete her psychological evaluation or attend her six counseling sessions, refusal to submit to random drug tests, and failure to comply with her other reunification goals demonstrate that the same pattern of deprivation would likely continue if the children were reunited with their mother. *In the Interest of J. M. S. M.*, 240 Ga. App. 294, 296 (523 SE2d 357) (1999). Similarly, appellant father's criminal history, pattern of substance abuse, failure to legitimate his child, and prolonged lack of interest in being a parent to his son show that the pattern of deprivation would likely continue. Id.

That same evidence supports a finding that continued deprivation would cause serious physical, mental, or moral harm to the children. *In the Interest of K. L.*, 234 Ga. App. 719, 722 (507 SE2d 542) (1998); OCGA § 15-11-94 (b) (4) (A) (iv). Thus, the fourth factor in determining parental misconduct or inability has been satisfied.

Finally, the court's conclusion that termination of parental rights is in the best interests of the children is supported by clear and convincing evidence. OCGA § 15-11-94 (a). "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citation and punctuation omitted.) *In the Interest of C. N. H.*, 238 Ga. App. 50, 53-54 (2) (517 SE2d 589) (1999). The ample evidence of appellants' parental inability coupled with evidence that D. T. and D. T. are thriving in their foster home supports the determination that termination of appellants' parental rights is in the best interests of the children.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED OCTOBER 11, 2001.

*Robert A. Kunz*, for appellants.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, T. Michael Flinn*, for appellee.