561 S.E.2d 166 (2002)
254 Ga. App. 34
In the Interest of R.W. et al., children.
No. A01A2410.
Court of Appeals of Georgia.
February 22, 2002.
*167 Webb, Lindsey, Collins, Jones & Wade, Martin C. Jones, Kelley S. Powell, Hampton, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Ashley Hawkins, Forsyth, for appellee.
MILLER, Judge.
L.W. appeals from the termination of her parental rights in her children, R.W. (girl age 12) and W.W. (boy age 16). On appeal L.W. argues that the court erred in finding clear and convincing evidence of her parental misconduct or inability and erred in finding that the termination of her parental rights was in the best interests of the children. L.W. further contends that the court erred in admitting certain review reports over her hearsay objection. We affirm.
On appeal we must determine whether, after reviewing the evidence in the light most favorable to the lower court's judgment, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.[1] We neither weigh the evidence nor determine the credibility of witnesses; rather, we defer to the trial court's factfinding if supported by evidence.[2]
Viewed in the light most favorable to the juvenile court's judgment, the evidence showed that the Department of Human Resources first became involved with the family in 1991 because the father had a history of alcohol abuse and because the children were in unsanitary living conditions. In March 1998, the children were removed from the home because of unsanitary living conditions, the mother's emotional instability, domestic violence, and alcohol abuse. The caseworker described beer cans in the yard and house, an enormous amount of trash piled up in the kitchen, and dirty clothes all over the house. The caseworker also testified to a previous visit to the home in which she observed cans of food open and all over the floor, dirty clothes throughout the house, no running water in the bathroom, and an inoperable toilet that was being used anyway and was full of feces.
A reunification plan was developed in April 1998, which required the father to have treatment for his alcohol abuse, the family to be in counseling, the parents to keep the home clean and safe, and both parents to obtain driver's licenses. L.W. complied with this plan, and the children were returned to her in August 1998.
In November 1998, the children were once again removed from the home because of unsanitary living conditions as well as domestic violence. The father had hit L.W., and there was evidence that the father had been drinking. In December 1998, a second reunification plan was developed with the same requirements as the first. L.W. once again completed the plan, and the children were returned to her in June 1999.
The caseworker had prepared a safety plan with L.W. in which she was not to leave the children unattended. The children were once again removed from the home in July 2000 because L.W. had left R.W. with someone in the trailer park whom she did not know and left W.W. with a man who had a history of sexual abuse. Over several days, both children were observed in the trailer park without supervision. L.W. was then *168 charged with two counts of child abandonment. The arresting officer described the home as one of the most unsanitary he had ever seen. He described trash all over the floor of the home, clothes everywhere, food on tables, a hot water heater spraying water onto a bare wire, no flooring in the bedroom, and dirty dishes piled in the sink.
In December 2000, upon review of a 30-day case plan, the court found that the parents' whereabouts were unknown and that nonreunification was in the children's best interests. A petition for termination of parental rights was filed in February 2001.
At the time of the hearing, the children were in foster care in a group home, and although both children wanted to return home, L.W. was living with a man and his mother and did not maintain a home of her own. W.W. had behavioral problems but was doing better since foster care. L.W. was cooperative with DHR for the most part, but at the time of the hearing in June 2001, she had not requested to be reunified with her children.
1. L.W. argues that the court erred in admitting review reports from a citizens review panel over her hearsay objection. Although a review panel is authorized to participate in the formulation of reunification plans,[3] the court cannot terminate parental rights on "findings almost exclusively based on findings of a citizen's review panel."[4] Here, however, the trial court did not base its findings exclusively on the findings of the review panel but also on the testimony of witnesses, including the caseworker who had been involved in the case since 1994. Moreover, as explained in Division 2, even apart from those reports, there was sufficient evidence to support the termination.[5]
2. In considering the termination of parental rights, the juvenile court shall first determine whether there is present clear and convincing evidence of parental misconduct or inability.[6] If there is, the court shall then determine whether the termination of parental rights is in the best interest of the child.[7]
(a) Parental Misconduct or Inability. Parental misconduct or inability is determined by finding that (i) the child is deprived; (ii) lack of proper parental care or control by the parent is the cause of the deprivation; (iii) the cause of deprivation is likely to continue or will not likely be remedied; and (iv) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.[8]
(i) Deprivation. As L.W. did not appeal the order of the juvenile court finding that the children were deprived, she is bound by that finding.[9]
(ii) Lack of Proper Parental Care and Control. The previous order also found that the children are deprived "in that they are without proper parental care, control, subsistence, and education as required by law, or other care and control necessary for their physical, emotional or mental health and morals." Therefore, L.W. is also bound by this unappealed determination.[10]
(iii) Deprivation is Likely to Continue. "In determining whether conditions of deprivation are likely to continue, the court may consider the past conduct of the parent."[11] It is important to note that although L.W. substantially complied with the case *169 plans, each time the children were returned, she would allow the home to revert to a filthy and unsanitary condition. Therefore, it is reasonable to expect that these conditions would continue.[12]
(iv) Children Likely to be Seriously Harmed by the Continued Deprivation. Both of the children were living in a home filled with trash, open food on the floor, dirty clothes scattered throughout the house, and a broken toilet full of feces. A rational trier of fact could find that these living conditions posed a serious health risk to the children and could affect them physically.[13] Therefore, the court was entitled to infer that the children would likely suffer harm due to the continued deprivation.
Thus, we conclude that the court properly found clear and convincing evidence of parental misconduct and inability.
(b) Best Interests of the Children. In determining that terminating L.W.'s parental rights would serve the best interests of the children, the court properly concerned itself with the need for the children to live in a safe, stable environment. To continue to remove the children from the home due to instances of unsanitary living conditions and lack of supervision would only serve to promote instability in their lives.[14] The evidence also showed that W.W.'s behavioral problems seemed to subside while he was in foster care.[15] Moreover, at the time of the hearing, L.W. did not maintain a household of her own and was living with another man and his mother. Therefore, she has not shown that she can provide a stable home for the two children.
As a rational trier of fact could have found clear and convincing evidence of parental misconduct or inability and could also have found that termination of parental rights was in the best interests of the children, the court did not err in terminating the mother's parental rights to the children.
Judgment affirmed.
ANDREWS, P.J., and ELDRIDGE, J., concur.
NOTES
[1] In the Interest of N.J.W., 233 Ga.App. 130, 503 S.E.2d 366 (1998).
[2] Id.
[3] See, e.g., OCGA § 15-11-58(b).
[4] In the Interest of M.L.P., 231 Ga.App. 223, 225, 498 S.E.2d 786 (1998).
[5] See In the Interest of A.T.H., 248 Ga.App. 570, 574-575(2), 547 S.E.2d 299 (2001).
[6] OCGA § 15-11-94(a).
[7] Id.
[8] OCGA § 15-11-94(b)(4)(A)(i)-(iv).
[9] In the Interest of M.L.P., 236 Ga.App. 504, 506(1)(a), 512 S.E.2d 652 (1999).
[10] See In the Interest of A.G., 253 Ga.App. 88, 89(1)(b), 558 S.E.2d 62 (2001); In the Interest of R.G., 249 Ga.App. 91, 93(1)(a), 547 S.E.2d 729 (2001).
[11] (Citation omitted.) In the Interest of R.D.S.P., 230 Ga.App. 205, 207, 495 S.E.2d 867 (1998).
[12] See N.J. W., supra, 233 Ga.App. at 134(1), 503 S.E.2d 366(c); In the Interest of K.L., 234 Ga. App. 719, 720-722, 507 S.E.2d 542 (1998).
[13] Cf. K.L., supra, 234 Ga.App. at 722, 507 S.E.2d 542.
[14] See In the Interest of V.S., 230 Ga. App. 26, 29-30(1), 495 S.E.2d 142 (1997).
[15] See In the Interest of R.W., 248 Ga.App. 522, 525(1), 546 S.E.2d 882 (2001).