570 S.E.2d 623 (2002)
257 Ga. App. 173
In the Interest of H.H. et al., children.
No. A02A1612.
Court of Appeals of Georgia.
August 23, 2002.
*624 Sherry H. Campbell, Warner Robins, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Laura W. Hyman, Asst. Attys. Gen., Williams, Sammons & Sammons, Walter G. Sammons, Jr., Warner Robins, for appellee.
MILLER, Judge.
Following a bench trial on a petition to terminate parental rights, the juvenile court terminated the parental rights of the parents of two young girls and a young boy. The parents appeal, arguing that the evidence did not suffice to sustain the judgment. The evidence showed that after the children were placed in foster care due to unsanitary living conditions and abandonment, the parents continued to live in squalor and did not comply with the court reunification plan. The State petitioned to terminate their parental rights, which petition the court granted based on the deplorable conditions continuing in the home. Since the evidence supports the trial court's order, we affirm.
At the time W.D.A.H. was born, his parents and two sisters were living with his paternal grandparents, who did not approve of a third grandchild. The mother concealed the pregnancy and gave birth to the boy in the backseat of a car, placing him in a plastic bag and abandoning him. The boy was discovered an hour later and hospitalized, where his body temperature was 94.2 (barely higher than that at which life is sustained), his kidneys were not functioning, and he was in a state of shock. The parents conceded that the boy was deprived, and the court immediately placed him into foster care.
The reunification plan required that the parents maintain a stable and secure home, free of hazards. Although the parents moved into their own home, they lived in unsanitary conditions, leading to a second court order one year later extending the State's custody of the boy. The court found that the boy had a skin condition that would not tolerate any level of uncleanliness, and *625 the court emphasized to the parents the need to maintain a clean household.
Three months later, the school system contacted the Department of Family & Children Services (DFACS) because the eldest daughter (five years old at the time) had been kept from school due to lice infestation. This daughter had missed 35 days of school due to head lice, and this time her head was "loaded with lice, especially around the ears, and they were large brown eggs, which meant they were very close to hatching...." A caseworker visited the home and also found nits, or lice eggs, in the other daughter's hair.
Beyond the lice, the caseworker discovered the home to be in a state of absolute squalor, which he documented through photographs. He found (1) feces on the floor in the dirty, unkempt kitchen, (2) no sheets or blankets on one daughter's bed (which the mother claimed were in the wash but indeed were not), (3) the other daughter's bed covered with stains and her room reeking of cat urine, (4) piles of clothes and toys strewn throughout the house, (5) garbage scattered throughout the house, (6) a kitchen littered with unwashed dishes and spilt liquids, (7) a bathroom sink full of trash, (8) rotting food and dirty dishes in a filthy living room, and (9) trash and abandoned cars throughout the yard. The daughters themselves were dirty. The court found the daughters deprived and placed them in foster care also.
The daughters but not the son were eventually returned to the parents, the parents agreeing with the court that the son should not yet be returned to them. DFACS sent an aide to teach and assist the parents with housekeeping techniques, but the parents were so uncooperative that the aide ceased those efforts. Forewarning the parents of her visit days in advance, a caseworker came to inspect the home for cleanliness, only to find a repeat of the earlier squalid conditions. The house reeked of cat feces and was in disarray, with laundry, filth, and trash throughout; one daughter's mattress was saturated with cat urine and the other's was very dirty with no sheets; and garbage overflowed the bags. The caseworker picked up the girls from school, finding them both with very strong body odors, filthy hair, and dirty clothes. These conditions resulted in another deprivation order that placed the daughters in foster care again. The parents again expressed a preference that the son not yet live with them. DFACS filed a petition to terminate the parents' rights to all three children.
Evicted from their residence, the parents then moved into a tiny two-bedroom mobile home that by their own admission was too small to house the three children. One bedroom was even filled to the ceiling with boxes, fertilizer, and equipment. Taking judicial notice of all prior evidence and court orders, the court received additional evidence and found particularly disconcerting the parents' adamant refusal to maintain a stable and secure hazard-free home for the children, despite four years of admonitions and efforts. The court granted the termination petition and, finding no suitable relatives who could care for the children, awarded custody to DFACS for the purpose of adoption.
The parents appeal, arguing (1) the evidence did not suffice to authorize termination, and (2) the court erred in not awarding custody to the paternal grandparents. As there was sufficient evidence to support the trial court's rulings, we affirm.
1. On appeal, our task is to determine whether a rational trier of fact could have found clear and convincing evidence of parental misconduct or inability and could have found that termination of the parents' rights was in the best interests of the children. OCGA § 15-11-94(a); In the Interest of B.D., 236 Ga.App. 119, 511 S.E.2d 229 (1999). "Parental misconduct is found when the child is deprived, the cause of the deprivation is lack of proper parental care or control, the deprivation is likely to continue or will not be remedied, and it is likely to cause serious physical, mental, emotional or moral harm to the child. [OCGA § 15-11-94](b)(4)(A)." B.D., supra, 236 Ga.App. at 119, 511 S.E.2d 229.
(a) Parental Misconduct. Regarding parental misconduct, the parents do not challenge the first two factors (the children are deprived as a result of lack of parental care), nor could they. On several occasions over *626 the four years, the juvenile court found the children deprived as a result of lack of proper parental care and control. As none of these orders were appealed, the parents were bound by the findings, and the first two factors are satisfied. In the Interest of R.G., 249 Ga.App. 91, 93(1)(a), 547 S.E.2d 729 (2001); see In the Interest of R.W., 254 Ga. App. 34, 36(2)(a)(i), (ii), 561 S.E.2d 166 (2002); In the Interest of A.G., 253 Ga.App. 88, 89(1)(a), (b), 558 S.E.2d 62 (2001).
Moreover, the squalid living conditions found in the parents' residencedespite four years of case plan mandates and DFACS attempts to assistendangered the children's health as manifest in the repeated, gross infestation of lice (causing the eldest child to miss 35 days of school). See OCGA § 15-11-94(b)(4)(C)(iii) (failure to comply with reunification plan may be factor). A rational trier of fact could have found the children to be deprived as a result of lack of proper parental care and control and could further have found that "these living conditions posed a serious health risk to the children and could affect them physically," thus satisfying the fourth factor. R.W., supra, 254 Ga.App. at 37(2), 561 S.E.2d 166(a)(iv); see In the Interest of S.S., 232 Ga.App. 287, 289-290(2), 501 S.E.2d 618 (1998); Vermilyea v. Dept. of Human Resources, 155 Ga.App. 746, 751(2), 272 S.E.2d 588 (1980). As explained in S.S., the parents' citation to In the Interest of D.S., 217 Ga.App. 29, 31-32(1), 456 S.E.2d 715 (1995), as contrary authority is unavailing, as that case is physical precedent only. S.S., supra, 232 Ga.App. at 289(1), 501 S.E.2d 618. "Moreover, the reunification efforts of DFACS in the case sub judice, such as providing a parent aide to appellant[s] and encouraging [them] to fulfill realistic goals[,] are sufficient to distinguish this case." Id.
Regarding parental misconduct, that leaves only the third factorthe cause of the deprivation is likely to continue or will not likely be remedied. The parents point to isolated instances when they were able to briefly clean the residence immediately before hearings. "[T]he court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue." (Citation and punctuation omitted.) In the Interest of D.W., 235 Ga.App. 281, 282, 509 S.E.2d 345 (1998). Where the evidence shows that after instances of cleanliness the parents repeatedly allow the home to revert to a filthy and unsanitary condition, a rational trier of fact could reasonably conclude that these unhealthy conditions would continue. R.W., supra, 254 Ga.App. at 36(2), 561 S.E.2d 166(a)(iii).
(b) Best Interests of the Children. The same factors which show the parents' inability to rear their children may also provide evidence that termination of their rights would be in the best interests of their children. D.W., supra, 235 Ga.App. at 283, 509 S.E.2d 345. The court may consider the children's need for a secure, stable home. OCGA § 15-11-94(a). Beyond the lice, the two daughters showed clear signs of developmental delay caused by the parents' misconduct. The unwanted son had not been raised by his parents at any point. Evidence sufficed on this factor.
2. The parents contend that the court erred in failing to place the children with the paternal grandparents. OCGA § 15-11-103(a)(1) provides:
If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family.... A placement shall be made under the terms of this paragraph only if such a placement is in the best interest of the child.
This determination rests within the discretion of the juvenile court, which determination we will not disturb absent an abuse of that discretion. See In the Interest of B.W., 254 Ga.App. 63, 65-66(3), 561 S.E.2d 199 (2002); In the Interest of S.K., 248 Ga.App. 122, 129(3), 545 S.E.2d 674 (2001).
The court carefully investigated the possibility of placing the children with the paternal grandparents. The court considered (1) the grandparents' opposition to the birth of the grandson, (2) the grandparents' general disinterest in getting custody of any of the children over the four years (despite *627 their knowledge that such was available), (3) the grandparents' lack of candor regarding their recent sudden interest in the children, and (4) the grandparents' age and health problems. The court concluded that the grandparents wanted the children simply as a ruse to return the children to their parents. Since evidence supported the court's finding that it was in the best interests of the children not to be placed with the grandparents, we discern no abuse of discretion. See B.W., supra, 254 Ga.App. at 65(3), 561 S.E.2d 199; In the Interest of C.L.R., 232 Ga.App. 134, 139(3), 501 S.E.2d 296 (1998).
Judgment affirmed.
BLACKBURN, C.J., and JOHNSON, P. J., concur.