A99A1236, A99A1259. IN THE INTEREST OF R. U. et al., children (two cases).
(521 SE2d 610)

JOHNSON, Chief Judge.

The parents of nine-year-old R. U. and eight-year-old J. U. appeal from the juvenile court's order approving the decision of the Whitfield County Department of Family & Children Services ("the department") to discontinue services designed to reunite the children with their parents. The father also appeals from the court's decision to extend its order placing temporary custody of the children in the department. The mother appeals in Case No. A99A1236. The father appeals in Case No. A99A1259.

This is the second time the parents of R. U. and J. U. have appealed to this court for a review of a decision of the juvenile court.

---

The department took custody of R. U. in 1992 and J. U. in 1993 because of the mother's substance abuse; her mental problems, including depression, personality disorders, and attempted suicide; the parents' mutual physical abuse; the father's emphysema and arthritis; and the father's admitted inability to raise the children alone. The juvenile court terminated their parental rights in 1995. The parents appealed the decision.

On appeal, this court vacated the juvenile court's order because the parents had made improvements and had accomplished many of the goals included in the case plan, the evidence of parental misconduct was stale, and there was an absence of clear and convincing evidence that the deprivation was likely to continue. *In the Interest of R. U.*, 223 Ga. App. 440, 442 (477 SE2d 864) (1996). We remanded the case to the juvenile court for consideration of alternative dispositions.

On remand, the juvenile court found the children were still deprived and continued temporary legal custody in the department. The step-grandparents continued to have physical custody of the children. The order was not appealed.

New case plans were developed in August 1997 and March 1998 which required the parents to pay child support; attend a support group for parents of hyperactive children; maintain consistent contact with the children; provide a safe, stable, appropriate home environment; undergo alcohol and drug abuse evaluation and submit to drug screening; cooperate with the department; and attend Parents Anonymous.

In April 1998, after finding that some of these goals had not been achieved, a citizen review panel recommended a non-reunification plan. The department agreed with the recommendation, and filed a motion requesting that the juvenile court approve its decision to discontinue reunification services. The department also moved to extend the juvenile court's April 1997 order which placed temporary custody in the department. In July 1998, after a hearing, the juvenile court granted the motions.

1. Both parents argue that the juvenile court erred in granting the department's motion to discontinue services aimed at reuniting them with the children. We disagree.

OCGA § 15-11-41 (i) provides that:

> There shall be a presumption that reunification services should not be provided if the court finds by clear and convincing evidence that: (1) The parent has unjustifiably failed to comply with a previously ordered plan designed to reunite the family; (2) A child has been removed from the home on at least two previous occasions and reunification services were made available on those occasions; (3) Any of the

grounds for terminating parental rights exist, as set forth in [OCGA § 15-11-81 (b)]; or (4) Any of the circumstances set out in [OCGA § 15-11-81 (b) (4)] exist, making it unnecessary to provide reasonable efforts to reunify.

The criteria set forth in OCGA § 15-11-41 (i) (1) through (3) have been met.

Both parents unjustifiably failed to comply with previous reunification plans. The mother failed to complete alcohol and drug abuse assessment and treatment as required by the plan. And, other than sometimes sending the children $20 or $50 for "spending money" and as gifts, she made no child support payments while the children were in the department's custody.

Nor did the mother maintain consistent contact with the children. She moved to California two and one-half years before the hearing and since then has not been involved with the children except to telephone them once a month and send them birthday presents, cards and spending money. She has visited the children only once during the past two and one-half years. The visit took place a few days before the hearing and ended abruptly two hours after the visit began; the mother decided it was "time to go" because R. U. had become "a little rowdy." The mother testified that she did not visit the children on any other occasion because she could not afford to travel to Georgia.

The father admitted that he does not always cooperate with the department, that he has "just given up" on some of the case plan goals and that he has stopped trying to achieve them. Although one of the requirements of the 1997 and 1998 case plans was that he attend Parents Anonymous meetings, he has not attended any meetings since the termination hearing in 1995.

He only visits the children once or twice a month, although he apparently lives just a short drive away. He admitted that he does not "keep as regular contact as [he] could." He sometimes does not visit because he gets "disgusted" by R. U.'s attitude. The father testified that health problems, including emphysema and asthma, limit his ability to engage in physical activities with the children, though he believed the limitations would not otherwise interfere with his parenting responsibilities. When asked if he is able to engage in physical activity with the children, he replied they are "pretty much on their own," and are "old enough you don't have to do much with them." The father has attention deficit hyperactive disorder, which is treated with medication and counseling. He receives Social Security benefits, from which support payments are deducted for the children. The children also have psychological disorders, for which they are treated with medication.

The record also demonstrates the father's failure to maintain a safe, appropriate and stable home. The step-grandmother testified that the father, who is her stepson, has a pattern of permitting women who are convicted felons and addicted to drugs and alcohol to live with him. She knew of three such women and believed the pattern had existed for at least three years. The father admitted having this habit, saying he sometimes "let[s] people come out there and stay because they have nowhere to stay." He stated that one of the women lived with him for a year and was present when the children came to visit. One such crack-addicted woman had moved out only four months before the hearing. She was at his house on the day of the hearing, though the father said she was not living there, but was doing housework for him.

The coordinator for the citizen review panel advised the father that he could not have custody of the children as long as he allowed drug-abusing women to live with him. Indeed, one of the court-ordered case plan goals was that "visitation shall not occur with either parent in the company of persons who may put the children at risk." The citizen review panel found in August 1997 that this goal was not achieved because the father had a woman living with him who had been incarcerated for murder. In March 1998, the review panel found that the father failed to meet the goal of providing a safe, appropriate and stable home because he was residing with a woman who had a criminal background and drug problem. At the hearing, the father admitted knowing that the panel was concerned about these relationships, but testified that they were not the department's concern as long as the children were not in his custody and were not being harmed. The panel coordinator testified that when she discussed the issue with the father, he laughed and told her that his counselor said he had a pattern of being attracted to crack-addicted women. There was clear and convincing evidence that both parents unjustifiably failed to comply with case plans designed to reunite them with the children.

Furthermore, non-reunification is justified by the undisputed fact that the children were removed from the parents' custody on two or more occasions and reunification services were previously provided. See OCGA § 15-11-41 (i) (2).

Finally, non-reunification is justified by the existence of grounds for terminating parental rights. See OCGA § 15-11-41 (i) (3). Termination is authorized where, among other things, the parents have failed to provide for the care and support of the children and have failed to comply with a court-ordered plan designed to reunite the children with the parents. See OCGA § 15-11-81 (b) (4) (C). Here, both parents failed to comply fully with the court-ordered reunification plans. Although they had six years to demonstrate their ability

to exercise proper parental care and control of the children, they failed to do so. The mother relocated to California and failed to support or visit her children. The father refused to remove troubled women from his home, despite case goals specifically requiring him to provide a safe, appropriate and stable home environment, despite goals prohibiting visitation when persons who may put the children at risk are present, and despite knowing that living with women convicted of felonies and addicted to drugs would prevent him from achieving these goals. He also failed to visit the children as often as he could have. We point out that four months before the July 1998 hearing, the father told the caseworker that he did not feel he would be able to "handle" or raise the children at that time, but that he would like to have custody of them when they were older.

The court-appointed special advocate, the case manager, and the caseworker recommended non-reunification. The case manager and step-grandmother testified that the children were happy and doing well in the grandparents' home.

On appeal, this court neither weighs the evidence nor determines the credibility of witnesses; we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met. *In the Interest of C. S.*, 236 Ga. App. 312, 314 (1) (511 SE2d 895) (1999). In light of the length of time the problems existed, the parents' failure to comply with the case plan goals, and the fact that the department removed the children from the parents' custody on at least two prior occasions, there was sufficient clear and convincing evidence from which the juvenile court could conclude that reunification services should not be provided. Therefore, the juvenile court did not err in approving the non-reunification plan. See *In the Interest of S. A. W.*, 228 Ga. App. 197, 200 (2) (491 SE2d 441) (1997).

2. The father argues the juvenile court erred in continuing custody of the children with the grandparents because the evidence showed he had changed and the evidence of his misconduct was stale. We disagree.

Just four months before the July 1998 hearing, the father told the caseworker that he did not feel he would be able to "handle" or raise the children at that time, but that he would like to have them when they were older. In addition, the father admitted that a drug-addicted woman moved out of his trailer only months before the hearing, and that she was at his house on the day of the hearing. He also admitted that he had given up on some of the case plan goals. This evidence was not outdated. See *In the Interest of B. D.*, 236 Ga. App. 119, 120 (1) (511 SE2d 229) (1999).

3. For the same reasons, the father's separate but similar enumeration that his present circumstances do not support the department's decision to cease reunification services is also without merit.

4. The father contends the evidence is insufficient to show that continuing efforts to reunite him with the children would be detrimental to the children. We disagree.

The caseworker, special advocate and step-grandmother testified that the children are doing well in the grandparents' home and agreed that the children should stay there. As discussed above, the father has had nearly seven years to achieve the court-ordered case goals. Allowing him additional time for improvement would be detrimental to these children who have spent all of their lives with no security regarding who would parent them. See generally *In the Interest of J. D. D.*, 215 Ga. App. 68, 71 (449 SE2d 655) (1994). They do not need further insecurity. See *In the Interest of D. I. W.*, 215 Ga. App. 644, 646 (1) (451 SE2d 804) (1994). We agree with the juvenile court's finding that these children need and deserve the stability they have in their grandparents' home, and see only detriment in trying to reunite them with their father.

*Judgments affirmed. Smith and Eldridge, JJ., concur.*

DECIDED AUGUST 10, 1999.

*Michael R. McCarthy*, for appellant (case no. A99A1236).
*Jerry W. Moncus*, for appellant (case no. A99A1259).
*Thurbert E. Baker, Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, Waycaster, Morris, Johnson & Dean, Cynthia N. Johnson*, for appellee.