586 S.E.2d 736 (2003)
262 Ga. App. 843
In the Interest of B.D.G., a child.
No. A03A1637.
Court of Appeals of Georgia.
August 21, 2003.
Sullivan, Sturdivant & Ogletree, Harold A. Sturdivant, Griffin, Michele W. Ogletree, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Cooper & Meier, Rebekah E. Meier, Griffin, for appellee.
RUFFIN, Presiding Judge.
The natural mother of B.D.G. appeals the juvenile court's order terminating reunification services and authorizing the Department of Family and Children Services ("DFCS") to pursue the goal of adoption for B.D.G. Finding no error, we affirm.
Before determining that reunification is no longer appropriate, a juvenile court must find "by clear and convincing evidence [that] reasonable efforts to reunify a child with his or her family will be detrimental to the child and that reunification services, therefore, ... should be terminated."[1] On appeal, we do not weigh the evidence or determine witness credibility, but "defer to the juvenile court's factfinding and affirm unless the appellate standard is not met."[2]
So viewed, the record shows that, on October 18, 2002, DFCS obtained a shelter-care order for two-year-old B.D.G., citing the mother's inability to maintain a stable and safe home.[3] Following an October 31, 2002 hearing, the juvenile court found B.D.G. to be deprived and awarded temporary custody to DFCS. This was the second time that B.D.G. had been placed in DFCS's custody.
The juvenile court's deprivation order noted numerous health and safety hazards in the mother's home that threatened B.D.G.'s welfare. Specifically, the testimony showed significant hazardous debris in the yard, broken and missing windows in the house, loose wires behind the refrigerator, car parts in the child's bedroom, and the use of the stovetop to heat the house. The court also noted that the child did not have shoes or a bed, which the mother had left at an ex-boyfriend's residence. Furthermore, the mother's home lacked utility service for several *737 days after DFCS removed B.D.G. because the mother failed to pay the utility bills.
In addition to granting DFCS custody, the juvenile court ordered the mother to comply with the reunification case plan incorporated in the court order. Given the mother's prior history with DFCS, the juvenile court also authorized the department "to immediately pursue the goal of adoption for [B.D.G.] at the expiration of three months in the event [the mother] is not in substantial compliance with [the plan]."[4] The plan required, among other things, that the mother undergo a substance abuse assessment, complete a drug treatment program, obtain a psychological evaluation and follow any treatment recommendations, clean the debris from in and around the house, attend a program for at-risk women, and visit B.D.G.
DFCS subsequently filed a complaint for nonreunification, and the juvenile court held a nonreunification hearing on February 20, 2003. At the hearing, DFCS case manager Veronica Parrot asserted that the mother had not substantially complied with the reunification case plan. In particular, the mother had not cleaned all of the hazardous debris from her yard, as required by the plan. Parrot also testified that the interior of the home was not suitable for the child. She noted that the light fixtures were not properly wired, the only heater in the house was located in the mother's bedroom, and the home was so drafty that tape and plastic had to be placed around the windows. Furthermore, although the mother completed the required women-at-risk assessment, substance abuse assessment, and psychological evaluation, she failed to enroll in the necessary counseling and therapy programs.[5] The case plan also included requirements for the mother's live-in boyfriend, who failed to meet many of those conditions.
The mother admitted at the hearing that she had not completed the case plan requirements, despite the three-month time period within which to comply. She testified, however, that she and her boyfriend had begun cleaning the house and yard, had removed some of the debris, and had made electrical repairs inside the home. According to the mother, she simply needed more time to finish cleaning and to make her home safe for B.D.G. She also stated that she would be able to enroll in the required counseling and therapy programs if given additional time.
Based on the evidence presented, the juvenile court concluded that the mother "failed without justifiable cause to substantially comply with her Court Ordered Case Plan for Reunification." It thus terminated reunification services and authorized DFCS to work toward a goal of adoption. We find no error.
On appeal, the mother argues that the juvenile court erred in approving nonreunification because DFCS failed to show that reasonable efforts to reunify the family would be detrimental to B.D.G. Under OCGA § 15-11-58, however, a presumption in favor of terminating reunification services arises when the juvenile court finds, by clear and convincing evidence, that "[t]he parent has unjustifiably failed to comply with a previously ordered plan designed to reunite the family."[6] The evidence supports such a finding here.
As noted above, Parrot clearly testified that the mother did not meet the case plan requirements. Furthermore, although the mother claimed that she worked "daily" to clean up her house and satisfy the other case plan goals, she readily admitted that she failed to make her home safe for B.D.G. within the 90-day time period established by the court. In an effort to excuse her failure to obtain counseling, the mother testified that she could not afford the therapy required by the case plan. According to Parrot, however, she sent the mother and her attorney a letter with the name of a free counseling center. And despite the mother's claim that she never received that letter, it is clear from her testimony that she learned *738 about the free counseling programs at some point before the hearing, but took no steps to enroll in them.
The mother testified that she could satisfy the case plan requirements if given additional time to comply. But "`judging the credibility of [her] good intentions was a task for the juvenile court. The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.'"[7] Clear and convincing evidence supports the trial court's conclusion that the mother unjustifiably failed to comply with the court-ordered reunification plan, raising a presumption that reunification services should not be provided. The mother has pointed to no evidence rebutting that presumption.[8] Accordingly, the trial court did not err in terminating the reunification services and approving the nonreunification plan.[9]
Judgment affirmed.
SMITH, C.J., and MILLER, J., concur.
NOTES
[1] OCGA § 15-11-58(h).
[2] In the Interest of R.U., 239 Ga.App. 573, 577(1), 521 S.E.2d 610 (1999).
[3] Specifically, DFCS alleged that the house in which the family was living had been condemned and that the mother had "[a]ttempted to give guardianship [of B.D.G.] to a stranger."
[4] The mother apparently did not appeal the deprivation order or challenge the three-month time limitation imposed by the juvenile court.
[5] Parrot acknowledged that the mother met the case plan's requirement for maintaining contact with B.D.G.
[6] OCGA § 15-11-58(h)(1); see also In the Interest of T.R., 248 Ga.App. 310, 311(3), 548 S.E.2d 621 (2001).
[7] In the Interest of L.S.M., 236 Ga.App. 537, 538, 512 S.E.2d 397 (1999).
[8] Compare In the Interest of M.H., 251 Ga.App. 528, 530, 554 S.E.2d 616 (2001) (presumption rebutted where psychologist hired by DFCS to evaluate the mother testified that mother has substantially complied with case plan and that, in his opinion, it was still possible to reunify the mother and her child).
[9] See In the Interest of T.R., supra at 311-312, 548 S.E.2d 621; In the Interest of S.A.W., 228 Ga.App. 197, 199-200(2), 491 S.E.2d 441 (1997).