588 S.E.2d 805 (2003)
263 Ga. App. 610
In the Interest of S.A. et al., children.
No. A03A1044.
Court of Appeals of Georgia.
October 14, 2003.
Joshua J. Smith, Dalton, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Sr. Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., Richard K. Murray, for appellee.
BARNES, Judge.
The natural father of S.A., C.A., and M.A. appeals the juvenile court's order terminating reunification services and extending and transferring permanent custody of the children. Finding no error, we affirm.
Before determining that reunification is no longer appropriate, a juvenile court must find "by clear and convincing evidence [that] reasonable efforts to reunify a child with his or her family will be detrimental to the child and that reunification services, therefore, ... should be terminated." OCGA § 15-11-58(h). On appeal, we do not weigh the evidence or determine witness credibility, but "defer to the juvenile court's factfinding and affirm unless the appellate standard is not met." (Citation omitted.) In the Interest of R.U., 239 Ga.App. 573, 577(1), 521 S.E.2d 610 (1999).
Viewed in that light, the record shows that on March 23, 2001, following its deprivation petition, the Department of Family and Children Services (DFACS) obtained a temporary placement order for S.A., C.A., and M.A. Following a hearing on the petition, the juvenile court issued an order granting temporary custody to DFACS and finding the children deprived. The juvenile court noted that the children witnessed ongoing domestic abuse in the home and that the parents had refused to cooperate with DFACS. The court also noted that DFACS had attempted on numerous occasions to contact the parents to sign a safety plan, but were never able to get the parents to meet with them and sign the plan. The children also had numerous absences from school and appeared afraid to talk with the caseworker. Furthermore, although the mother had initially told authorities that the father had beaten her on different occasions, at the deprivation hearing she recanted her earlier accusations and said that other people caused her injuries.
In addition to granting DFACS custody, the juvenile court ordered DFACS to submit a reunification case plan which would be incorporated in the court order. The juvenile court authorized the department to include parenting classes, psychological and/or psychiatric evaluation, and alcohol and drug evaluation and any recommended treatment in the case plan.
The order also stipulated that the plan require the father to undergo anger management *806 and that the mother participate in group therapy for battered women. The parents apparently did not appeal the deprivation order. On May 18, 2001, the mother died.
On February 15, 2002, DFACS filed a motion to extend custody for an additional one-year period, which was subsequently amended to include nonreunification and the transfer of custody. The juvenile court held a nonreunification hearing on June 6, 2002. At the hearing, a behavior specialist for the girls' school system testified that all three girls were minimally verbal and "seemed to be very frightened girls, very withdrawn girls." She initially became involved when one of the girls as a kindergartner began to masturbate excessively during class. She worked with the child for a few months and resolved the inappropriate behavior. Later, the same child began to have serious behavior problems which were worse before visits with her father. The specialist observed during two of the children's visits with their father that the girls appeared very uncomfortable when their father hugged them. She also testified that she had the opportunity to observe the girls in their current home and they appeared very happy. She expressed concern that returning the children to their father's home would be too "disturbing" for the children, but opined that the girls would benefit from some type of relationship with their father. The principal of the elementary school two of the girls attended testified that the girls had shown improvement in their grades and attendance over the last year, and that based on the children's progress, she would be opposed to the children being returned to their father.
The DFACS case manager testified that the department believed that it was in the best interests of the children that they not be reunified with their father "in regards to safety and child rearing." He noted that while the father had complied with some of the requirements of the reunification case plan by obtaining housing, completing parenting classes, and undergoing a psychological evaluation and had completed his anger management class, the father has a long criminal record and is currently on probation for family violence, including second degree cruelty to children, and violation of the Georgia Controlled Substances Act. He further noted that the psychological evaluation revealed that the father functioned intellectually on a third-grade level and could not take care of the three girls on his own.
The evaluation also revealed that the father had issues with anger, resentment, and depression. The caseworker said that the father refused to cooperate with the department. He testified that the father had missed both of his mediation appointments and had refused five drug screenings since December 2001. The caseworker, a former police officer, testified that based on his experience, the father appeared under the influence on more than one occasion during visitation with the children. The caseworker also testified that the children exhibited anxiety around their father and appeared afraid of him.
Furthermore, the father made hostile and threatening comments to the caseworker and, although instructed to do so, refused to contact the caseworker on a regular basis. The caseworker testified that the children are doing very well in their current placement with relatives, appear to feel safe in the home, and have expressed to him that they want to continue living where they are. He recommended that custody be permanently transferred to the aunt and uncle, but that the father continue to have contact with the children. At the conclusion of the hearing, the guardian ad litem recommended that, based on the evidence, "it would be in the children's best interest to grant the Motion for Non-reunification and permanent transfer of custody."
Shortly after the hearing, the juvenile court sua sponte reopened the evidence to elicit testimony from the psychologist who performed the evaluation on the father. The doctor testified that he was concerned about the father's ability to parent because he has a physical disability and "admits that he needs help to take care of himself." He also testified that because of the father's history of domestic violence, "you would want to know what is the man's breaking point.... [I]t might be reasonable to let him take one child and see how he does. But I wouldn't give *807 him three children, not without seeing whether he can handle them or not."
On appeal, the father argues that the juvenile court erred in approving nonreunification because the evidence was insufficient to show that the reunification of the family would be detrimental to the three girls. Specifically, he argues that, contrary to the factual finding in the court's order, there was no evidence that he had a physical disability which rendered him incapable of caring for his children.
Pretermitting whether there is medically verifiable evidence of a debilitating physical disability, OCGA § 15-11-58(h) presumes that reunification services should not be provided if the court finds by clear and convincing evidence that:
(1) The parent has unjustifiably failed to comply with a previously ordered plan designed to reunite the family; (2) A child has been removed from the home on at least two previous occasions and reunification services were made available on those occasions; (3) Any of the grounds for terminating parental rights exist, as set forth in subsection (b) of Code Section 15-11-94; or (4) Any of the circumstances set out in paragraph (4) of subsection (a) of this Code section exist, making it unnecessary to provide reasonable efforts to reunify.
OCGA § 15-11-58(h); see also In the Interest of T.R., 248 Ga.App. 310, 311(3), 548 S.E.2d 621 (2001).
In its order terminating reunification, the juvenile court found that although the father had completed many of the case plan goals, he "failed and refused to obtain drug screens when requested by the Department." In its amended order terminating reunification and transferring permanent custody, the trial court found by clear and convincing evidence
pursuant to OCGA § 15-11-94(b)(4)(B)(ii), that the father has a history of chronic unrehabilitated abuse of intoxicating liquors or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the children.
Our review shows the finding of the juvenile court that the father has a history of unrehabilitated abuse of alcohol or drugs is supported by clear and convincing evidence. The father had several positive drug screenings, and five missed drug screenings, which, according to DFACS policy, are viewed as positive. The caseworker also testified that the father appeared to be intoxicated during several of his visits with the children. Finally, the father also admitted to the psychologist that he had in the past used alcohol and marijuana.
On appeal, "this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met." (Citation and punctuation omitted.) In the Interest of L.S.M., 236 Ga.App. 537, 538, 512 S.E.2d 397 (1999). Because there was clear and convincing evidence sufficient from which the juvenile court could conclude that reunification services should be discontinued, the order of the court is accordingly affirmed. In the Interest of R.U., supra, 239 Ga.App. at 577, 521 S.E.2d 610.
Judgment affirmed.
ANDREWS, P.J., and ADAMS, J., concur.