614 S.E.2d 896 (2005)
273 Ga. App. 276
In the Interest of K.M.C. et al., children.
No. A05A0065.
Court of Appeals of Georgia.
May 13, 2005.
*897 Seals & Whatley, E. Earl Seals, Lagrange, for appellant.
Thurbert Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, James T. Hunnicutt, Lagrange, for appellee.
BARNES, Judge.
The natural mother of K.M.C., born December 12, 1995, and Z.Z.C., born September 29, 2000, appeals the termination of her parental rights.[1] She contends the juvenile court erred by not dismissing the petition because counsel was not appointed to represent her before the judicial citizens review panel ("the review panel") and she was not advised of her right to such counsel and also erred by terminating her parental rights to the children.
The record shows that the case was initiated by the deprivation petitions for both children that were filed on June 1, 2001, alleging that they were deprived because the mother drank excessively and left the children at home alone, that she was currently incarcerated, and that no relatives were available to care for the children properly. A 72-hour hearing was conducted and the juvenile court issued an order finding probable cause to believe that the children were deprived and that the precipitating causes of the removal of the children from the home were the mother's incarceration, physical abuse of K.M.C., the mother's use and abuse of alcohol, improper supervision of the children, *898 and domestic violence in the home. As a result, the court granted temporary custody of the children to the local Department of Family and Children Services ("DFCS") pending an adjudicatory hearing and directed DFCS to prepare a reunification plan. The order shows that the mother was represented by counsel at the hearing.
Following another hearing at which the mother was again represented by counsel, the juvenile court issued an order of adjudication and disposition. Among other findings, the juvenile court found that the mother was incarcerated pending her trial on aggravated stalking charges, that she had a history of excessive use and abuse of alcohol, that she failed to provide a safe, stable nurturing home for the children, that she neglected their physical and emotional needs, that she left the children unattended for long periods, and that she physically abused K.M.C. and caused him injury by her neglect. The court concluded that the children were deprived as defined in OCGA § 15-11-2(8)(A), and that continuation in the home was contrary to the welfare of the children. Consequently, the court awarded temporary custody and control of the children to DFCS, incorporated a reunification plan in the court order, and directed that the mother pay $70 per week in child support after she was released from incarceration. This order was not appealed.
After a permanency hearing on January 15, 2002, during which the mother waived legal representation, the juvenile court issued an order finding that reunification efforts would be detrimental to the children, that reunification services should not be provided because the mother had unjustifiably failed to comply with the reunification plan, and that the following grounds for termination of her parental rights existed: excessive use of alcohol, physical, mental, or emotional neglect of the children, and the mother was again incarcerated and had not completed any portion of the reunification plan. Thus, the trial court concluded that the children should be placed with their grandmother. This order also was not appealed.
Following a conference, which the parents attended and waived counsel, the juvenile court reviewed the permanency plan and the court promulgated another order. The court approved the plan, not to reunify the family, and to grant permanent custody to the grandmother. Both parents agreed with that plan.
Subsequently, DFCS moved to extend the prior court order because the mother had made no effort to regain custody and continued to be incarcerated, and the father had neither sought to legitimate the children nor sought to gain their custody. Both parents attended the hearing on the motion, waived counsel, and agreed to extend the existing custody order and continue the permanency plan. DFCS stated that it did not intend to seek termination of the parents' parental rights. The court found that the children were still deprived as they lacked proper parental care or control, continued the current plan, and directed that the case be reviewed by the review panel.
Before the date the court set for the panel review, however, the court held another hearing. The parents were neither served nor required to be present. DFCS reported that the grandmother had not filed for custody and that it did not appear likely that she would do so, that she might not be an appropriate placement, and that DFCS intended to amend the plan to call for termination of the parents' parental rights and for adoption of the children. The court also considered the report of the Court Appointed Special Advocate ("CASA") and then ordered DFCS to file an amended plan and attempt to find adoptive parents for the children. The CASA report agreed with DFCS's concerns about the grandmother ever taking custody of the boys and stated that it appeared that adoption might be the CASA's ultimate recommendation.
In November 2002, DFCS petitioned to terminate the parents' parental rights, alleging that the mother had abandoned her parental responsibilities, had an unrehabilitated alcohol problem that prevented her from providing for the children's needs and safety, did not pay child support as ordered, did not maintain steady employment, did not maintain a stable, safe home for the children, did not complete parenting class, did not complete the case plan requirements, and continued *899 to be charged with criminal violations. A hearing was scheduled on February 13, 2003, and the mother appeared with counsel, but the hearing was delayed.
After a hearing on May 22, 2003, the juvenile court published its findings of facts, conclusions of law, and order terminating the parents' parental rights. The mother was again present and represented by the same counsel who had represented her during the earlier hearings in this matter and who is representing her in this appeal. Among other pertinent findings of fact, the juvenile court found that the nonappealed deprivation orders were res judicata, that the children were deprived as defined in OCGA § 15-11-2(8)(A), that the lack of proper parental care and control caused the deprivation, that the cause of the deprivation was likely to continue and not be remedied, and that the continued deprivation would cause serious physical, mental, emotional, or moral harm to the children. The court also found that all the causes of deprivation found by the court after the July 2001 full adjudicatory hearing were still present.
The court further found that the mother made no efforts to regain custody of the children before the date the termination hearing was originally scheduled, except to visit the children. The court also found that the mother did complete the parenting classes, but that the class director and instructor each testified that she merely attended but did not acquire and demonstrate appropriate parenting skills.
The court further found that the mother had a history of abusing alcohol and continued to abuse alcohol that caused "outrageous conduct in public, domestic violence in the home (including physical altercations involving the use of weapons), physical and emotional abuse of these children, a lack of general supervision of these children, and the inability to maintain stable employment and residence," and that the mother refused alcohol intervention and treatment.
The court also found that the mother had been incarcerated seven times since May 2001 and 17 times since January 1999, and that even though the incarcerations were for short terms, the frequent arrests and incarcerations showed her "chaotic lifestyle and inability to bring any stability or permanency" to the children's lives. Additionally, the mother and the children lived with a woman with whom the mother had numerous physical confrontations and who had "cut" her numerous times, as demonstrated by the scars she displayed in court, and one of these incidents occurred with the children present.
The court also found that the mother never paid any child support, even though required to do so by the court and she made no fundamental change in her circumstances since the children were removed from the home and she was unlikely to make such changes. The children's guardian ad litem recommended that the mother's parental rights be terminated.
Consequently, the court found clear and convincing evidence of parental misconduct and inability of such a nature that it was in the best interests of the children to terminate the mother's parental rights, that DFCS had attempted, but was unable to find a suitable and willing relative to take custody of the children, and that reasonable efforts were made to reunite the family, but that it was contrary to the welfare of the children to return them to the custody of the mother.
The juvenile court concluded that the mother's parental rights should be terminated because the children were deprived as a result of her misconduct and lack of proper care, that the deprivation was likely to continue and not be remedied, and that, if allowed to continue, it would cause physical, mental, emotional, or moral harm to the children. Accordingly, the court terminated the mother's parental rights.
1. The mother contends clear and convincing evidence does not support the termination of her parental rights. The thrust of her argument is that the evidence does not support the finding that her children's deprivation is likely to continue. She asserts that the evidence merely shows past unfitness, and that more recent evidence shows that she changed her life after finally realizing that she might lose her children.
*900 An appellate court reviews a decision to terminate parental rights by considering the evidence in the light most favorable to the appellee and by determining whether a rational trier of fact could have found by clear and convincing evidence that the parental rights should have been terminated. In the Interest of A.C., 230 Ga.App. 395, 396(1), 496 S.E.2d 752 (1998). Additionally, we defer to the juvenile court's factfinding and neither weigh the evidence nor determine witness credibility. In the Interest of L.H., 236 Ga.App. 132, 133(1), 511 S.E.2d 253 (1999).
Viewed in this manner, the evidence shows that the children came to the attention of DFCS when the police notified DFCS that the mother was being arrested and that the children needed care. When DFCS visited the home another time, they found no adequate food, no adequate diapers, and no clean clothes for the children. When interviewed by DFCS, K.M.C. said that they were left alone a lot, he had to cook for them, he had burned his hand doing so, and he cut himself with a knife while peeling potatoes.
In June 2001, the mother signed a plan for her reunification with the children that required her to (1) keep the children safe from physical harm, by having a psychological evaluation, completing any counseling recommended, following the psychologist's recommendations, and using nonharmful discipline with the children such as timeout or withholding of privileges, (2) demonstrate the ability to care for and supervise her children by obtaining child care and by completing parenting classes, (3) become and remain alcohol free by obtaining a substance abuse assessment and following the treatment recommendations, attending and completing an alcohol treatment program, submitting to random alcohol screens, and remaining alcohol free for six consecutive months.
Although the mother's incarceration hampered completion of the plan at first, when she was released from jail, DFCS made her appointments for psychological counseling and an alcohol assessment, but she did not show up. She did, however, earn one-half credit toward completing parenting class. Later, goals of getting a job and maintaining a stable home were added to the reunification plan, but the mother did neither, and from June 2001 until August 2002 she made no progress on reunification with her children. Further, when she was out of jail, DFCS had difficulty contacting her and she showed up at the DFCS office intoxicated on one occasion.
The mother was also ordered to pay child support of $70 per week. Although she had several jobs after she was released from jail in January 2003, she never paid support in any amount. The mother also never established her own residence. Instead, she lived with her mother and with a friend.
In January 2002, as the children had been in foster care for 15 of the most recent 22 months (see OCGA § 15-11-58(m)) and with the mother's agreement, the plan was changed to a nonreunification plan with the children to be in the custody of their paternal grandmother. Despite DFCS's encouragement, however, the grandmother never petitioned for custody. Also, no other family members would take the children. Consequently, the children were placed in foster care. Between June 2001 and August 2002, K.M.C. had two foster care placements and Z.Z.C. had three.
The children's putative natural father attended the hearing. He testified that, while he loved the children, it would be in their best interests for the court to terminate his parental rights because he was unable to care for them.
The mother testified and agreed that she did not make progress on the case plan because she was in and out of trouble so much, but that after February 2003, she completed parenting classes, had a psychological evaluation, and passed several drug screens. She also visited the children and talked to her pastor about a stable place to live. She testified that she changed her life because she was tired of the children being in DFCS custody and because she loved them and wanted them back so that she could raise them. She said she missed them and wanted to be there for the boys.
The evidence clearly shows, however, that the mother made no substantial steps toward completing any of the case plan requirements *901 until after a hearing was scheduled to terminate her parental rights. At the time of the termination hearing, however, she only had completed a psychological assessment and a parenting class. Further, although the mother had successfully taken drug tests, the trial court found that she had not produced evidence that she had not continued to abuse alcohol.
A juvenile court uses a two-step process when considering whether to terminate parental rights.
First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home. On appeal, we view the evidence in the light most favorable to the juvenile court's ruling and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated.
(Footnotes omitted.) In the Interest of T.B., 249 Ga.App. 283, 285-286(1), 548 S.E.2d 45 (2001).
Since no appeal was taken from the deprivation order, the temporary custody order, or the nonreunification order, the mother is bound by those determinations. In the Interest of B.P., 207 Ga.App. 242, 244, 427 S.E.2d 593 (1993). Also, a parent's past conduct properly is considered when the court determines whether the conditions of deprivation are likely to continue. In the Interest of J.L.Y., 184 Ga.App. 254, 257, 361 S.E.2d 246 (1987) (a decision on a "child's future must rest on more than positive promises which are contrary to negative past fact"); In the Interest of D.I.W., 215 Ga.App. 644, 646(1), 451 S.E.2d 804 (1994). The juvenile court was also authorized to consider the testimony that the mother did nothing more than attend parenting class, and that she did not learn or demonstrate appropriate parenting skills.
Considering the evidence of the mother's alcohol abuse, frequent incarceration and failure to change substantially her lifestyle, we find that clear and convincing evidence supported the juvenile court's findings that the children were deprived because of lack of proper parental control or inability, that this deprivation was likely to continue, and that the continued deprivation would cause or was likely to cause serious physical, mental, emotional, or moral harm to the children. In the Interest of D.T., 221 Ga.App. 328, 330(1), 471 S.E.2d 281 (1996). Accordingly, clear and convincing evidence supported the juvenile court's decision to terminate the mother's parental rights.
2. The mother alleges that the juvenile court erred by denying her motion to dismiss the proceedings because she was not provided counsel or advised of her right to counsel during the review panel's review of her compliance with the case plan. The juvenile court reserved ruling on the issue, but ultimately concluded that the mother was not entitled to counsel at those proceedings because judicial citizens review panel reviews are not proceedings under the Juvenile Code.
Counsel stipulated that the children's case was considered by the review panel on August 20, 2001, November 19, 2001, February 24, 2002, August 19, 2002, November 18, 2002, and February 24, 2003, that the mother attended the reviews on August 20, 2001, and February 24, 2003, and that she did not have an attorney at the panel reviews she attended and was not offered the opportunity to request an attorney at any of the panel reviews. The court stated that the court's policy was not to appoint counsel for panel reviews, that the mother was not provided counsel at any of the panel reviews, and that she was not advised by the court that she would be entitled to counsel at the panel reviews.
The mother bases her entitlement to counsel on OCGA § 15-11-6(b):

*902 Except as otherwise provided under this article, a party is entitled to representation by legal counsel at all stages of any proceedings alleging delinquency, unruliness, incorrigibility, or deprivation and if, as an indigent person, a party is unable to employ counsel, he or she is entitled to have the court provide counsel for him or her. If a party appears without counsel, the court shall ascertain whether such party knows of his or her right to counsel and to be provided with counsel by the court if he or she is an indigent person. The court may continue the proceeding to enable a party to obtain counsel and shall provide counsel for an unrepresented indigent person upon the request of such a person. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more parties conflict, separate counsel shall be provided for each of them.
(Emphasis supplied.) Id. Even though this Code section speaks in terms of "at all stages of any proceedings" the entire section shows that the legislature contemplated proceedings by the juvenile court and not a judicial citizens review panel. OCGA § 15-11-6(b) provides that "if a party appears without counsel, the court shall ascertain" whether the party knows of her right to counsel and that "the court may continue the proceeding[s]." (Emphasis supplied.) The section makes no reference to appearances before a judicial citizens review panel, and what actions are required of a review panel. Therefore, we find that OCGA § 15-11-6(b) does not apply to reviews by a judicial citizens review panel.[2] OCGA § 1-3-1(a) (courts must look diligently for the intent of the General Assembly when interpreting statutes). The meaning of a statutory clause depends upon the intention with which it is used as manifested by its context and considered with reference to the subject matter to which it relates, Thomas v. MacNeill, 200 Ga. 418, 424, 37 S.E.2d 705 (1946), and statutes should be read according to their natural and most obvious import without resorting to subtle and forced constructions to either limit or extend their operation. Burbridge v. Hensley, 194 Ga.App. 523, 524(1), 391 S.E.2d 5 (1990). Accordingly, we conclude that the proceedings mentioned in OCGA § 15-11-6(b) are proceedings before the juvenile court, and not the reviews by the review panel. The mother has pointed to no provision in any statute, rule, or program guideline supporting her position other than OCGA § 15-11-6(b), and we have found none.
This court has held previously that
[t]he citizen's review panel's findings of fact and recommendations are not legal evidence as the panel is not a court of record and its actions are not necessarily in compliance with regard to legal due process considerations. The court of record in these cases is the juvenile court, and its findings must be based on legal evidence and constitutional considerations.
In the Interest of M.L.P., 231 Ga.App. 223, 224, 498 S.E.2d 786 (1998). The holding is consistent with our holding today that counsel is not required at panel reviews.
Additionally, we find that any error resulting from the failure of the mother to have counsel at the review panel was harmless because the record shows that the juvenile court did not rely upon the review panel's recommendations in terminating her parental rights. At the conclusion of the hearing, the trial court stated that it had based its findings on factors not developed by the review panel, and the evidence, discussed above, supports this statement. Therefore, no harm resulted from the lack of participation by the mother's counsel in the review panel meetings. In the Interest of R.W., 254 Ga.App. 34, 35-36(1), 561 S.E.2d 166 (2002).
Judgment affirmed.
RUFFIN, C.J., and JOHNSON, P.J., concur.
NOTES
[1] Although the father's parental rights were also terminated, as discussed below, he consented to that action and he is not a party to this appeal.
[2] Because no such hearing was held in this case, we do not address any situation which might arise from a permanency hearing under OCGA § 15-11-58(o)(3) in which the juvenile court has directed that a judicial citizens review panel conduct the hearing.