662 S.E.2d 802 (2008)
In the Interest of C.P., a child.
No. A08A0161.
Court of Appeals of Georgia.
May 29, 2008.
Timothy J. Crouch, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Holly A. Bradfield, for appellee.
SMITH, Presiding Judge.
The putative father of C.P. challenges the juvenile court's order terminating reunification services. He also appeals a separate order placing C.P. in the permanent custody of the child's maternal uncle. For reasons that follow, we affirm.[1]
1. Before terminating reunification services, "a juvenile court must find by clear and convincing evidence that reasonable *803 efforts to reunify a child with his or her family will be detrimental to the child." (Punctuation and footnote omitted.) In the Interest of B.D.G., 262 Ga.App. 843, 586 S.E.2d 736 (2003). On appeal, we construe the evidence in the light most favorable to the juvenile court's judgment and factual findings. Id.
So viewed, the evidence shows that sometime after his birth in October 2003, C.P. was removed from his parents' home, adjudicated deprived, and placed with his maternal uncle and aunt. He then left their care and lived briefly in a foster home, but returned to the aunt and uncle's house, where he has lived continuously since 2004.
C.P., who was three years old at the time of the April 2007 hearing, refers to his uncle and aunt as "Daddy" and "Mommy" and never asks about his biological father. Although the father has been incarcerated for most of C.P.'s life, he was out of prison for approximately four months in 2006. During that period, he did not visit C.P., and the aunt testified that the father has never provided any child support or gifts for his son. The father also made little effort to contact C.P., the uncle, or the aunt by letter or telephone while C.P. has been in their care. On the date of the hearing, the father had been back in jail for seven months, awaiting trial on charges of aggravated assault and possession of methamphetamine.
A caseworker from the Department of Family and Children Services ("DFACS") testified that the goals of the father's case plan required him to resolve his legal issues, legitimate C.P.,[2] and cooperate with DFACS. According to the caseworker, the father failed to complete these goals, and the father admittedly did not legitimate his son. Although the father claimed he could not afford to pursue legitimation, he conceded that he had a job when out of prison in 2006.
Under OCGA § 15-11-58(h)(1), "[t]here shall be a presumption that reunification services should not be provided if the court finds by clear and convincing evidence that . . . [t]he parent has unjustifiably failed to comply with a previously ordered plan designed to reunite the family." The juvenile court concluded that such failure occurred here. We find no error.
Without dispute, the father neglected to legitimate C.P., a central requirement of his case plan since 2004. The record demonstrates that the father knew about this requirement and, in fact, initiated legitimation proceedings while incarcerated in 2005, but dismissed the petition after claiming that he could not pay for a DNA test. The following year, however, the father was out of prison and gainfully employed. Nevertheless, he again failed to legitimate his son. Given this evidence, the juvenile court was authorized to reject the father's financial excuse and find that he unjustifiably failed to comply with his reunification case plan, raising a presumption that reunification services should be terminated. See OCGA § 15-11-58(h)(1); In the Interest of B.D.G., supra, 262 Ga.App. at 845, 586 S.E.2d 736.
Moreover, nothing in the record rebuts this presumption. The father offered no valid excuse for failing to legitimate his child. He has been incarcerated for the majority of C.P.'s life and, at the time of the hearing, faced additional jail time if convicted of several pending charges. The father also made little effort to maintain contact with C.P., even when not incarcerated, and provided no financial support for the boy, who views his aunt and uncle as "Mommy" and "Daddy."
At the hearing, the father asserted that he would be able to work and support his child once released from prison. "But judging the credibility of [his] good intentions was a task for the juvenile court. The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Punctuation omitted.) In the Interest of B.D.G., supra, 262 Ga.App. at 845, 586 S.E.2d 736.
The evidence supports the trial court's ultimate determination that reasonable efforts to reunify C.P. with his father would be detrimental to C.P. In the Interest of B.D.G., supra, 262 Ga.App. at 845, 586 S.E.2d 736; In the Interest of S.A., 263 Ga.App. 610, 613-614, 588 S.E.2d 805 (2003). Accordingly, the *804 juvenile court properly terminated reunification services. Id.; OCGA § 15-11-58(h).
2. After terminating these services, the juvenile court awarded long-term custody of C.P. to the maternal uncle. Again, we find no error. The record shows that at the time of the hearing, C.P. enjoyed a significant bond with his aunt and uncle, with whom he had lived for several years. The placement had previously been approved by DFACS and the juvenile court. Furthermore, the aunt testified that she and her husband were both willing and financially able to care for C.P. permanently. Under these circumstances, the trial court properly placed C.P. in the uncle's long-term custody. See OCGA § 15-11-58(i)(1)(A) (once reunification services are terminated, the juvenile court may place child in the long-term "custody of a relative of the child if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child").
Judgment affirmed.
MIKELL and ADAMS, JJ., concur.
NOTES
[1] The juvenile court reported that C.P.'s mother consented to the termination of reunification services, and she is not a party to this appeal.
[2] The father and C.P.'s mother were never married.