A09A2100. IN THE INTEREST OF M. O. et al., children.
(687 SE2d 916)

BLACKBURN, Presiding Judge.

The aunt and uncle of M. O. and M. O., minor children, appeal from an order of the juvenile court finding that M. O. and M. O. were deprived and continuing custody of those children with the Paulding County Department of Family and Children Services ("the Department"). Specifically, the aunt and uncle argue that there was insufficient evidence to support the juvenile court's determination that the children were deprived, within the meaning of OCGA § 15-11-2 (8). Discerning no error, we affirm.

> On appeal from a deprivation order, we review a juvenile court's finding of deprivation in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the children were deprived. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.

(Punctuation omitted.) *In the Interest of J. A.*[1]

So viewed, the record shows that M. O. (male) and M. O. (female) are fraternal twins, born in November 1999 to a single mother.[2] The aunt and uncle took custody of the twins following their mother's death, but there is no evidence in the record showing that the aunt and uncle were ever more than physical custodians of the children — i.e., there is no evidence of a court order granting them either legal guardianship or even legal custody of the twins.

The Department became involved with the family in early 2008.[3] At that time, the aunt and uncle reported that, since coming to live with them, the twins had been acting out sexually and harming themselves physically. The Department recommended that the aunt and uncle take certain actions, including obtaining counseling for the twins. Instead, choosing to believe that the children were the victims of a voodoo curse, the aunt and uncle returned with the twins to their native Nigeria, where they had a priest pray over them.

The Department took custody of the twins in April 2008, after the boy sustained a number of second-degree burns on his body while

---

[1] *In the Interest of J. A.*, 298 Ga. App. 11, 11 (679 SE2d 52) (2009).

[2] The record shows that the twins' mother conceived them via artificial insemination, and that their father is unknown.

[3] There is nothing in the record to indicate what prompted the Department's involvement with the family.

in the home of the aunt and uncle. The Department caseworker who was assigned to the family met the uncle at the hospital, where he had taken the boy for treatment of his burns.[4] The caseworker asked hospital personnel to treat injuries he noticed on the girl, who was also present at the hospital; the uncle never sought medical treatment for his niece's injuries.

In July 2008, following a three-day hearing, the juvenile court entered an order finding the children deprived, granting custody to the Department, and finding that reunification with the aunt and uncle were not in the best interests of the children. The aunt and uncle moved to set aside the order as to nonreunification, and the juvenile court granted that motion. Thereafter, on September 16, 2008, the juvenile court held a second hearing on the issue of reunification.

In an order dated October 22, 2008, the juvenile court granted the Department's motion for nonreunification and approved the nonreunification plan submitted by the Department. The order of nonreunification was based on the juvenile court's factual findings that, while in the custody of the aunt and uncle, the twins were subjected to aggravated circumstances, including chronic abuse, sexual abuse, and torture. Given those findings, a legal presumption arose that reunification would be detrimental to the twins, and the aunt and uncle offered no evidence to rebut that presumption. See OCGA § 15-11-58 (a) (4) (h). See also *In the Interest of B. D. G.*[5]

Specifically, the juvenile court found that during their time in the aunt and uncle's home, the children had been subjected to physical abuse at the hands of both their uncle and their then-13-year-old cousin, I. O. Additionally, the juvenile court found that I. O. had sexually abused the twins and had tortured them by, among other things: spraying household chemicals into their eyes and onto their private parts and then refusing to allow the children to rinse off the chemical agents; forcing the children to swallow household chemicals; forcing the children to eat their feces and drink their urine; cutting the children with a razor; inserting objects into various orifices on the children's bodies; and refusing to allow the girl to sleep. In making these findings, the trial court specifically noted that "the abuse suffered by the twins was one of the worst abuse cases [ever] heard by this court" and that after coming to live with their aunt and uncle, the twins "must have felt that they had been dropped into hell."

---

[4] Despite the serious nature and the number of the burns sustained by the boy, the aunt (who was a hospital technician) and the uncle delayed for several hours before seeking treatment for him.

[5] *In the Interest of B. D. G.*, 262 Ga. App. 843, 845 (586 SE2d 736) (2003).

The trial court further found that both the aunt and uncle denied that either they or I. O. (their daughter) were in any way responsible for the injuries sustained by the twins, and consistently blamed the twins for inflicting these injuries on themselves and/or each other. They steadfastly maintained that I. O. had done nothing wrong, despite the fact that she had been arrested for her crimes against the twins. The uncle also testified at the hearing that he did not plan to get I. O. counseling because she did not need it, and that he did not need counseling.

The juvenile court also noted that neither of the twins had suffered any injuries — self-inflicted or otherwise — since being removed from the home of their aunt and uncle. The court credited the testimony of the children's therapist, who reported that the twins were very closely bonded and were loving toward and support-ive of each other. The therapist further opined that the twins had lived in "constant fear" while in their aunt and uncle's home and that it was in their best interest not to be reunited with those family members.

The aunt and uncle did not appeal the order of nonreunifica-tion,[6] and have had no contact with the twins since that time. On March 3, 2009, the Department moved for an extension of the July 21, 2008 order of the juvenile court which granted the Department custody of the twins based upon the finding that the children were deprived. The trial court held a hearing on that motion, at which the Department presented evidence showing that the twins were living together in the same foster home and were thriving; that the twins had not suffered any injuries (self-inflicted or otherwise) or exhibited any abnormal behavior since being removed from the aunt and uncle's home; that the foster family desired to adopt the twins; and that the twins continued to be treated by the same therapist that was treating them at the time of the initial deprivation hearing. The Department caseworker assigned to the case testified that, in light of the nonreunification order, the Department was not obligated to provide the aunt and uncle with reunification services. She stated, however, that the aunt and uncle had not provided the Department with any evidence that they had gone to counseling or parenting classes, as previously recommended by both the Department and by the nonreunification order entered by the juvenile court. In the absence of any evidence showing that the aunt and uncle had taken

---

[6] The aunt and uncle's failure to appeal that order, which was separate from the order finding that the children were deprived, means that they are bound by the findings of fact and conclusions of law contained therein. See *In the Interest of K. M. C.*, 273 Ga. App. 276, 282 (1) (614 SE2d 896) (2005). As is discussed infra, some of those findings were relevant to the juvenile court's finding of current deprivation.

steps to remedy the circumstances resulting in the twins' deprivation, therefore, the Department presumed that those circumstances continued to exist.

Following the hearing, the juvenile court entered an order finding that the children were deprived and granting the Department's motion for continued custody. The aunt and uncle then brought this appeal, and we assume arguendo that they had standing to do so.

The sole claim of error asserted by the aunt and uncle is that the Department failed to show that, at the time of the April 2009 hearing, the twins were deprived children. We disagree.

The juvenile court found that the twins were deprived under OCGA § 15-11-2 (8) (A), in that they were "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." The evidence introduced at the hearing below supports this finding, because it showed that the twins had no legal or biological parents and no legal guardian, and hence were without parental care or control. Specifically, the evidence established that the children's mother was deceased, that their father was unknown, that the aunt and uncle had lost both physical and legal custody of the twins, and that, based on the nonreunification order, the Department did not view the aunt and uncle as potential guardians or custodians of the twins. Accordingly, the evidence supported a finding of deprivation based not only upon a lack of parental care and control, but also under OCGA § 15-11-2 (8) (D), which defines a "deprived child" as one that "[i]s without a parent, guardian, or custodian." See *In the Interest of J. R. P.*[7]

The aunt and uncle attempt to avoid this result by arguing that the Department was required to show specifically that the deprivation found by the juvenile court in its July 2008 order still existed at the time of the April 2009 hearing. They reason that because the Department had no contact with the aunt and uncle since the order of nonreunification was entered in October 2008, the Department could not meet this burden. Assuming arguendo that the Department was required to make such a showing, however, we find that it did so.

"Where [a] child is removed from . . . custody [based upon a finding of deprivation], the [D]epartment may prove current deprivation in subsequent proceedings by showing that, if the child were returned to [custody] at the time of the hearing, he or she would be

---

[7] *In the Interest of J. R. P.*, 287 Ga. App. 621, 622 (652 SE2d 206) (2007).

deprived." *In the Interest of P. D. W.*[8] At the hearing below, the Department introduced into evidence, without objection, the unappealed nonreunification order entered by the juvenile court. The findings of fact contained therein showed that the circumstances resulting in the twins' deprivation could be remedied only if the aunt and uncle: (1) accepted that someone in their household, other than the twins, was responsible for the abuse and torture the children suffered; and (2) acknowledged that their daughter, I. O., had problems that required professional help, and then obtained that help for her. Those findings also showed, however, that the aunt and uncle felt that the twins were responsible for their own abuse and injuries, that they refused to acknowledge that either they or their daughter bore any responsibility for the same, and that they refused to seek professional help for either themselves or their daughter. The Department also showed that, in the six months since the nonreunification order was entered, the aunt and uncle had provided it with no evidence demonstrating that either of them had received counseling, obtained counseling for I. O., attended parenting classes, or taken any other steps to alleviate the circumstances that resulted in the twins' deprivation. Despite being present at and participating in the hearing below, the aunt and uncle, who were represented by counsel, did not present any evidence to rebut the Department's showing. Nor did either of them acknowledge — either through their testimony or otherwise — that they bore some responsibility for the abuse suffered by the twins.

Collectively, this evidence supported the juvenile court's conclusion that "[t]he circumstances [which resulted in the twins'] deprivation remained the same at the time of the . . . hearing" on the motion to continue custody. *In the Interest of J. L. C.*[9] See *In the Interest of A. S.*[10] (fact that parent refuses to accept any responsibility for the abuse or neglect suffered by the children in the past supports a finding of current deprivation).

In light of the foregoing, we affirm the order of the juvenile court.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED DECEMBER 8, 2009 — ▇▇▇▇▇▇▇

*Ernest D. Napier III*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior*

---

[8] *In the Interest of P. D. W.*, 296 Ga. App. 189, 191-192 (1) (a) (674 SE2d 338) (2009).
[9] *In the Interest of J. L. C.*, 292 Ga. App. 763, 767 (666 SE2d 98) (2008).
[10] *In the Interest of A. S.*, 285 Ga. App. 563, 567 (646 SE2d 756) (2007).

ATLANTA LAW LIBRARY

*Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Joseph T. Justice*, for appellee.