A99A0189. IN THE INTEREST OF A. P. H., a child.

(514 SE2d 46)

Judge Harold R. Banke.

The mother of 15-year-old A. P. H. appeals the juvenile court's finding of deprivation and award of custody to his stepfather. Appellant enumerates three errors on appeal.

A. P. H.'s stepfather commenced this action less than one month after appellant, his ex-wife, moved out of his home. While seeking reconciliation, the stepfather nevertheless alleged that appellant had renewed her acquaintance with A. P. H.'s natural father, an ex-convict, and was "staying out in bars and upsetting the minor child greatly." See OCGA § 15-11-24. At the hearing on his petition, the stepfather admitted the evidence was insufficient for termination and his goal was limited to fulfilling the child's desire to live with him.

The gist of A. P. H.'s complaints against his mother were that since her divorce from his stepfather over a year before, during the periods the couple lived apart, she dated other men and, on one occasion, imbibed alcohol at a bar until approximately 2:00 a.m. and was hung over the next day. Apparently A. P. H. learned of his mother's actions through his stepfather, who telephoned her and then confronted her in A. P. H.'s presence.

Appellant's son also complained that one evening he saw his mother with a man in a van from 12:15 to 1:05. A. P. H. admitted that when his mother dated, she left him with a responsible adult and he had never seen her in bed with any of her dates. He also admitted that his mother provided him with food, shelter, and clean clothing. The record shows that the mother was employed and in the process of purchasing a home at the time of the hearing. When asked if his mother beat him, the child answered in the negative, but insisted on stating that on one occasion after she told him to get off the phone on a call to his stepfather, and he told her to wait, she hit him twice on the knee cap with a paddle.

A. P. H. claimed he was deprived because his mother would not allow him to contact his stepfather and stepsister. However, he admitted that in the three weeks his mother and stepfather had

ceased cohabiting, he had spent three nights with his stepfather and telephoned him twice a day. He admitted that he was doing well in school, made fairly good grades, and planned to finish and enter the armed services. The child admitted, "[t]here ain't nothing I wouldn't do for [his stepfather]." *Held*:

To authorize even a temporary loss of custody by a parent on deprivation grounds, the deprivation must arise from the parent's unfitness, "that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child." *In the Interest of S. S.*, 232 Ga. App. 287, 289 (501 SE2d 618) (1998). Proof that a child is "without proper care or control, subsistence, education as required by law, or other care or control necessary for [the] child's physical, mental, or emotional health or morals" is required to establish that deprivation. OCGA § 15-11-2 (8) (A). "A finding of unfitness must center on the parent alone." *Carvalho v. Lewis*, 247 Ga. 94, 95 (274 SE2d 471) (1981). Such a finding cannot be based on a determination that a child "might have better financial, educational, or even moral advantages elsewhere." Id. Clear and convincing evidence must support the finding of deprivation. Id.; *In the Interest of R. R. M. R.*, 169 Ga. App. 373, 374 (1) (312 SE2d 832) (1983).

Further, application of the "best interest of the child" standard to award a change in custody between a parent and a third party is inappropriate. *In the Interest of R. L. L.*, 258 Ga. 628 (373 SE2d 363) (1988); *Carvalho*, 247 Ga. at 94; *In the Interest of J. C. P.*, 167 Ga. App. 572, 573 (307 SE2d 1) (1983). Here, the trial court explicitly applied that improper standard, notwithstanding the mother's numerous, well-founded objections.

Moreover, the record unequivocally fails to support the finding of deprivation with clear and convincing evidence. The child admitted that he sought a change in custody not because the food, shelter, or care he received were inadequate, but because he disapproved of his mother's rather unremarkable contact with men other than his stepfather, who was obviously very influential to the child. See *Saxon v. Saxon*, 207 Ga. App. 471 (428 SE2d 376) (1993).

A. P. H.'s contention that at 15 he is entitled to choose the parent with whom he desires to live lacks merit. See OCGA § 19-9-3. His stepfather is not a parent within the meaning of that statute. See *Franklin v. Gilchrist*, 268 Ga. 497 (491 SE2d 361) (1997). Nor was the juvenile court authorized to appoint the stepfather as A. P. H.'s guardian of choice so long as either natural parent survived and was not unfit. *Whitlock v. Barrett*, 158 Ga. App. 100, 102 (4) (279 SE2d 244) (1981).

In light of our findings above, we need not reach the remaining enumeration.

*Judgment reversed. Blackburn and Barnes, JJ., concur.*

DECIDED MARCH 3, 1999.

*Strickland & Garmon, Jeffrey D. Garmon*, for appellant.
*Benjamin Smith, Jr.*, for appellee.