699 S.E.2d 346 (2010)
In the Interest of V.A.D., a child.
No. A10A0485.
Court of Appeals of Georgia.
July 8, 2010.
*347 Joshua J. Smith, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Kathryn A. Fox, Asst. Atty. Gen., Bruce A. Kling, Dalton, for appellee.
SMITH, Presiding Judge.
The mother of 13-year-old V.A.D. appeals from a juvenile court order finding V.A.D. to be deprived. We find the evidence of deprivation clear and convincing and therefore affirm.
On appeal from a juvenile court's finding of deprivation,
we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.
(Citations and punctuation omitted.) In the Interest of D.T., 284 Ga.App. 336, 336-337, 643 S.E.2d 842 (2007).
So viewed, the evidence shows that on July 1, 2009, in response to a complaint filed by the Whitfield County Department of Family and Children Services (DFACS), the juvenile court entered an order for shelter care for then 12-year-old V.A.D. The court ordered that V.A.D. be placed in the care of DFACS because "[t]he biological mother is no longer capable of meeting said child's basic needs, as the child will not allow her to do so. Said child refuses to abide by biological mother's rules and does what she pleases."
On July 10, 2009, and prior to a 72-hour hearing, DFACS filed a deprivation petition alleging that V.A.D. was deprived because: (1) she was without proper parental care and control, (2) the whereabouts of her father were unknown and the father failed to provide for the child, (3) V.A.D. had not responded to DFACS's efforts to provide ongoing services, (4) V.A.D. had been hospitalized several times for mental health issues, (5) she refused to obey the mother's rules and requests and would not allow the mother to adequately provide for her needs, and (6) there were no other known fit and willing relatives able to provide for V.A.D. On July 15, 2009, following a 72-hour hearing, the trial court placed V.A.D. in the temporary custody of DFACS.
On July 16, 2009, V.A.D. submitted to a psychological evaluation. The psychologist noted that V.A.D. has had severe mood swings since infancy, "swings from `highs and lows' that cycle every five days or so," and had seen a number of different counselors since March 2008. His report revealed that V.A.D. demonstrated extreme mood variability and clinically significant depression. The report concluded that stress in V.A.D.'s environment "appears to exacerbate her mood variability, especially when faced with limits or restrictions," and that V.A.D. was "suffering from the beginnings of a significant mental illness that will likely continue to create problems for her." V.A.D. was diagnosed with severe Bipolar I Disorder with psychotic features. The psychologist recommended that V.A.D. be immediately placed in a residential treatment facility, concluding that V.A.D. is a risk to herself and others due to her "highly variable and unpredictable mood presentation." He also found that V.A.D. demonstrated a number of risk factors for suicide and had poor control of her mood and strong experiences of anger.
On August 5, 2009, the juvenile court held a hearing on DFACS's deprivation petition. The mother testified that she did not know *348 the whereabouts of V.A.D.'s father and that he had never provided support for V.A.D. She testified further that DFACS became involved with her family when her son E.D. was placed in foster care in June 2009. Four months prior to the deprivation hearing, the mother lost her job because her employer went out of business. She was unemployed at the time of the deprivation hearing and living on unemployment benefits in the amount of $1,400 per month. She stated that V.A.D. had been hospitalized for her mental health issues six times within the past two years. On one of those occasions V.A.D. was in DFACS custody when she was admitted.
The mother testified that V.A.D. has severe mood swings and that she had threatened to hurt herself during an argument with her brother. The mother took V.A.D. to a mental health hospital to have her evaluated. After a second visit at the hospital, V.A.D. had cuts on her arms and told her mother that "she learned that the other girls cut themselves, and that's when she started cutting on herself." The mother acknowledged that V.A.D. has been diagnosed with having bipolar disorder, and she was aware that the psychologist has recommended inpatient treatment for V.A.D. When asked if she knew what was needed to provide for V.A.D., the mother stated "Yes. I get a lot of counseling from my mom who is an RN, and she helps me." The mother stated that V.A.D. refused to go home with her on one occasion, but explained that it was due to V.A.D.'s illness, "when she gets mad or gets upset, she many times says things and then she'll retract."
The case manager assigned to V.A.D.'s case testified that when he visited the home V.A.D. shared with her mother and brother, he often smelled urine. He stated that V.A.D. had had a problem with bedwetting, but that the mother "did try to clean up, but the odor was stillI could still smell it." The case manager later acknowledged that he had received a report that V.A.D. no longer had bedwetting problems.
Following the hearing, the juvenile court made findings of fact and conclusions of law. The court found that V.A.D. was deprived and without proper parental care and control, and ordered that she be placed in the custody of DFACS for one year. The court ordered further that the mother complete a case plan for reunification that required her to, among other things, attend parenting classes, undergo psychological evaluation, maintain supervised visitation, and pay child support. The court ordered DFACS to obtain physical examinations, ordinary medical care, and any additional treatment which was necessary for the care and well being of the child.
Under OCGA § 15-11-2(8)(A), "deprived child" is a child "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." "That definition focuses upon the needs of the child regardless of parental fault. The deprivation petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue." (Citation, punctuation and footnote omitted.) In the Interest of S.J., 270 Ga.App. 598, 599, 607 S.E.2d 225 (2004).
In the deprivation order, the court stated that V.A.D. came to the attention of the court when her brother E.D. appeared in court on several occasions for various offenses. The court noted that when the court proceedings had ended, neither E.D. nor V.A.D. wanted to return home with their mother. The court gave further details concerning E.D.'s adjudications for family violence battery and explained that E.D. beat his mother on two occasions, was adjudicated delinquent, and found to be deprived. The court found that the mother had tried for a year and a half to get residential treatment for V.A.D. without success and that V.A.D. is a risk to herself and others. The court concluded that V.A.D.'s "current psychological problems are severe and require inpatient treatment, which the mother admits she has been unable to obtain."
The evidence here supports the trial court's conclusion that V.A.D. suffers from severe mental illness and that she is a danger to herself and others. The psychologist found that her mental health will continue to *349 deteriorate and that she needs long-term residential treatment. Although the mother made attempts to seek proper care for V.A.D., she made those attempts for a year and a half without success. The mother acknowledged V.A.D.'s diagnosis, but the record reveals that she may not appreciate the severity of the child's illness. The mother's testimony focused on her belief that V.A.D. "needs help in learning to cope, to work on her self-esteem," and that her problems stemmed from the absence of her stepfather.
Under the circumstances here, the juvenile court was correct in finding that the evidence of V.A.D.'s deprivation was clear and convincing.[1] See In the Interest of D.T., supra, 284 Ga.App. at 338-339(1), 643 S.E.2d 842 (finding of deprivation upheld where evidence showed child had severe mental health issues and mother was unable to control the child).
Judgment affirmed.
MIKELL and ADAMS, JJ., concur.
NOTES
[1] The mother also takes issue with the juvenile court's placement of V.A.D. with DFACS for one year, although she did not specifically enumerate as error the court's ruling on this issue. We hold that the record supports the juvenile court's finding that continuation in the home would be contrary to V.A.D.'s welfare, and its decision to award temporary legal custody to DFACS. See OCGA § 15-11-55(a)(2)(A); In the Interest of S.S., 232 Ga.App. 287, 289, 501 S.E.2d 618 (1998) (temporary loss of custody must have resulted from unintentional or intentional misconduct or by physical or mental incapability to care for child).